## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1902.

*(Continued from Volume 97.)*

JOHN F. RUTH, Respondent, v. ST. LOUIS TRAN-
SIT COMPANY, Appellant.

St. Louis Court of Appeals, January 20, 1903.

1. **Demurrer to the Evidence: INFERENCE: PRACTICE, TRIAL.**
On a demurrer to the evidence, that construction and weight must
be given to it which is most favorable to the plaintiff; and if in its en-
tire scope it tends to prove the facts necessary to make out the plain-
tiff's case, the cause should be submitted to the jury.

2. **Malicious Prosecution: PROOF.** Proof, or evidence tending to
prove the following facts are essential to authorize the submission
of a cause for malicious prosecution to the jury: first, the institution
or prosecution by the defendant of the proceedings complained of;
second, that the proceedings have finally terminated in favor of the
plaintiff; third, want of probable cause on the part of defendant to
believe plaintiff guilty of the offense charged; fourth, malice on the
part of defendant in instituting or continuing the prosecution.

3. **Malicious Prosecution: CORPORATION: AGENT.** In the case at
bar, the conductor on defendant's car was acting within the scope of
his authority when he caused the arrest of plaintiff and preferred
the charge of disturbing the peace against him, and his acts in pro-
ceeding against plaintiff were the acts of the defendant company.

4. ———: ———: EVIDENCE: EXPRESS MALICE. In the case at bar, the evidence tends to prove express malice, but if it is not sufficient to prove express malice, legal malice may be implied from the fact that the prosecution was instituted wrongfully and without justification and excuse.

5. ———: ———: ———: COMPENSATION: DAMAGES. In an action for malicious prosecution, compensation may be recovered for every injury caused by the arrest, imprisonment and prosecution, including loss of time, attorney's fees paid out to procure plaintiff's acquittal or release, and injuries to the feelings and reputation.

6. ———: EXEMPLARY DAMAGES. Exemplary damages are not allowable in actions for malicious prosecution unless there is proof of express malice.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED (*conditionally*).

### STATEMENT.

The action is for malicious prosecution. The material parts of plaintiff's own testimony is as follows:

"I got on the car at Twenty-first and Cass avenue. I walked in and took a seat on the north side of the car running east, the second seat from the rear; I sat there some few minutes, or whatever time it was, and the conductor came for my fare; I offered him a nickel I had and he refused to take it; I told him that I thought the nickel was good. He told me he did not think it was good and he would not take it; I told him it was all I had and I thought it was good; we argued a few minutes; he took hold of me, pulled me out of the seat to the door; at the rear door I blocked it so that he could not get through; I sat down; he beckoned for the motorman to come back and help him; there were three, if not four, policemen on the rear platform; the motorman beckoned back, or in words, I don't remember exactly how it was, but he referred him to the policemen.

"There were words spoken, I can't remember the words, and the conductor asked the policemen to arrest me.

"The policeman got the nickel from me and they looked it over and they hesitated; the conductor was talking to them, and finally one of the policemen agreed to arrest me. He took me down on the same car, down to Eighth and Carr; on Eighth and Carr they wanted me to go around the line; I said no, I had business to attend to, to arrest me there; they took me off the car and took me to Seventh and Carr, the policeman took me in there. It was understood when we got off the car the conductor was to stop.

"The policeman told the conductor to stop on his return trip on Seventh street at the station. In the meantime I was taken to the station."

Plaintiff was held at the station until the conductor came in. When he came in, the captain of the police for the Fourth district asked him if plaintiff hit him. The conductor answered that he did not.

"Capt. Kiely asked: 'Why did you have the man arrested?' and he said: 'Because he gave me illegal tender.' Capt. Kiely said: 'What is the matter with the nickel?' And the conductor made some excuse.

"Capt. Kiely said he saw no case there to hold me for and I wanted him to arrest me so I could get out and get my money for my men working for me, and I would give bond, he said he could see no case for that, and he would send me to the Transit Company, and for them to prefer charges. That was the only nickel I had on me when I got on that car.

"Capt. Kiely then sent me out with a police officer, and on the same car with the conductor out to the Transit Company's office on Spring and North Market. Before starting Capt. Kiely said to the officer, in case the company did not prefer charges on me that he was to ride back to my place of business, and he agreed to that because I did not have any money."

Plaintiff further states that his only nickel was in the possession of the conductor and when they arrived at the sheds of the Transit Company they were met by Mr. Minary, the foreman, who came to the window of the office.    The policeman produced the nickel and the conductor asked Minary if the company would receive the money from him.    ''Minary went and sent a lady in charge there to the telephone; the telephone was in hearing of the same office we were standing in, and this lady kind of explained the case over the telephone.''

Minary came back and ordered the policeman to prefer a charge of disturbing the peace, and the plaintiff was then taken back to the station where a charge of violating the following city ordinance was preferred against him:

''Sec. 1459.    *Disturbances of the Peace.    Penalty.* Any person, who, in this city, shall disturb the peace of others by violent, tumultuous, offensive or obstreperous conduct or carriage, or by loud and unusual noises, or by unseemly, profane, obscene or offensive language, calculated to provoke a breach of the peace, or by assaulting, striking or fighting another; or any person, who, in this city, shall permit any such conduct in or upon any house or premises owned or possessed by them, or under their management or control, so that others in the vicinity are disturbed thereby, shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined not less than five nor more than five hundred dollars.''

The case was assigned to police justice Adolph Wislizenus for trial.    Plaintiff gave bond to appear before the justice on February 4, 1901, and was released from custody.

On plaintiff's application the cause was continued from February fourth to February eighth.    On the latter date the parties appeared and the cause was heard by the justice.

To sustain the charge two witnesses were sworn,

Ruth v. St. Louis Transit Co.

Dyer, the police officer who made the arrest, and the conductor; both of whom testified in effect that there was no fighting or offer to fight on the car; that no violence or objectionable language was used by the defendant (plaintiff here). On the evidence of these witnesses the justice discharged the defendant and no further proceedings were had.

Plaintiff read in evidence the following rule of defendant for the guidance of its conductors, which rule defendant admitted was in force:

"In case of trouble on a car call a policeman, when one can be found, and when it becomes necessary to eject a passenger from a car it must be brought to a full stop, using no more force than is required to remove him from the car. This should never be done except in extreme cases, and then the names of several witnesses should be taken, for reference if necessary."

The plaintiff testified that he paid out $3.50 to procure a bond before the justice and $10 to an attorney to represent him in that court; that on the day he was arrested he was detained until 12:30 p. m., but was not locked up at any time.

In respect to the arrest and facts leading up to it, and the subsequent proceedings, the evidence is all one way. There was evidence offered tending to show that the nickel offered to the conductor by plaintiff in payment of his fare was worn smooth on one side, but on the other the stamped device was plain to be seen and that it was a good and current nickel.

The conductor testified in respect to it as follows:

"Q. I will ask you whether or not you refused that coin in good faith, believing that it was not legal tender? A. I did; thinking it was not good myself, I called the passengers' attention to it and got their opinion.

"Q. Did you entertain any malice to Mr. Ruth? A. No, sir; my idea was to be courteous to him; I was quite anxious to be courteous.

"Q. Was there a scuffle at any time between you and the man when attempting to eject him from the car? A. There was when I got near the door.

"Q. How did it manifest itself on the passengers in the car? A. It caused the ladies to scream and rush to the front end of the car.

"Q. I will ask you whether or not Mr. Ruth stated while he was in the car, that he would not leave the car unless he was arrested? A. He made such a statement, repeatedly made it.

"Q. That he would not leave the car unless arrested? A. Yes, sir.

"Q. After he was arrested he left the car peacefully? A. He left the car, did whatever the policeman suggested.

"Q. Did he state to you that you could take that coin or nothing? A. Yes, sir; he made that statement.

"Q. Your instructions are contained in the book of rules which is bound in blue? A. Yes, sir.

"Q. Your verbal instructions are to read the book and observe the rules? A. Yes, sir; those are my instructions; I think I understand them.

"Q. That is the extent of your verbal instructions? A. That is the extent of my verbal instructions.

"Q. You had never had occasion to consult anybody in reference to an occurrence like this? A. I never had.

"Q. That is the first occurrence of the kind you met with? A. Yes, sir."

He also testified that the piece tendered him by the plaintiff "was perfectly smooth on both sides so that he could not tell what it was; that the only possible mark of any kind was a perpendicular mark like the shield portion of some old-fashioned five-cent piece; that was the only thing that would indicate that it had been money."

He further testified that he was not acquainted with

Ruth v. St. Louis Transit Co.

plaintiff; that he tried to treat him courteously and had
no malice against him.

During the controversy in the car there were sev-
eral police officers on the back platform and after the
first attempt of the conductor to put plaintiff off, he
called to the police to arrest plaintiff. The police were
slow in responding to the request and in the interval
plaintiff repeatedly stated that he would not leave the
car unless he was arrested.

For the plaintiff the court instructed the jury as
follows:

"1. The court instructs the jury that the issue in
this case is whether from all the facts and circumstances
given in evidence the defendant instituted the proceed-
ings against the plaintiff and caused his arrest on the
charge of disturbing the peace, as set forth in the mu-
nicipal ordinance read in evidence, and prosecuted the
same without a belief in the guilt of plaintiff, based
upon circumstances sufficiently strong in themselves to
induce such belief in the mind of a reasonable and cau-
tious man; and in addition thereto that the defendant
was actuated in such prosecution by malice against the
plaintiff.

"2. The court instructs the jury that if they find
and believe from a preponderance of the evidence:
First, That defendant, through the conductor on the
car mentioned in the evidence, acting within the scope
of his authority, as defined in instruction No. 3, institu-
ted and prosecuted the proceedings against the plaintiff
set forth in the petition. Second. That the prosecu-
tion alleged in said petition was finally determined in
favor of plaintiff. Third. That from all the facts and
circumstances connected with the case the defendant,
at the time of instituting and carrying on the prosecution
mentioned in the petition, had no reasonable or proba-
ble cause to believe plaintiff was guilty of the offense
charged, as more fully explained in instruction num-
bered 5. Fourth. That in said proceedings against

the plaintiff, alleged in the petition, the defendant was actuated by malice toward plaintiff. Then their verdict will be for the plaintiff, and they will assess his actual damages in such sum, not exceeding one thousand dollars, as they believe from the evidence will fairly and reasonably compensate him for any necessary and direct loss of or outlay of money incurred in and about the defense of said charge and for any shame, mortification, mental anguish and pain and injury to his feelings or reputation, which they may believe from the evidence was suffered by him and directly resulted from defendant's said action; and the jury is further at liberty, if they believe from the evidence that said alleged act or acts of defendant were done wantonly, maliciously and in gross disregard of plaintiff's rights as a passenger on defendant's car (and if they think just and proper in view of all the facts and circumstances in evidence) to award to plaintiff punitive or exemplary damages in addition to actual damages in such sum, not exceeding one thousand dollars, as they believe will, under all the circumstances of the case, punish defendant and serve as a warning to others against a like course of action; and if the jury find in favor of plaintiff as to punitive damages, they will so find and the amount thereof, separately, and separately state in their verdict.

"3. The court further instructs the jury that defendant is liable for all acts committed by its officers, servants and employees while in the performance of the work intrusted to them, respectively, whether lawful or unlawful, which are within the scope of the authority conferred upon them either expressly or by fair implication even though the specific act was not expressly authorized by defendant. If therefore the jury find and believe from the evidence that the act or acts complained of in the petition and mentioned in these instructions were committed by a servant or employee, while in the performance of the work intrusted to him, and was within the scope of the authority conferred either ex-

pressly or by fair implication upon him, then such act or acts are in law the acts of defendant, even though it should not appear from the evidence that defendant expressly authorized the specific act.

"4. If the jury find and believe from the evidence that the defendant instituted the prosecution for disturbing the peace against plaintiff without probable cause as defined in these instructions, and that in so doing, it was actuated either by hostile, angry or vindictive motives against the plaintiff, or that its acts in so doing was intentionally done with a knowledge that it was without legal justification or foundation, then its acts in so doing would be malicious, within the meaning of the law and of these instructions; and the jury are instructed that they are at liberty to infer the existence of malice on the part of defendant from the facts and circumstances which they may find and believe from the evidence established want of probable cause as in these instructions defined.

"5. The court further instructs the jury that by the words 'probable cause' as used in these instructions, is meant a belief by the defendant in the guilt of the accused based upon facts and circumstances sufficiently strong in themselves to induce such belief in the mind of a reasonable and cautious man.

"6. The court further instructs the jury that it is the duty of a common carrier of passengers to carry all persons who may apply and who pay or offer to pay in lawful money of the United States the fare required; and the jury is further instructed, as a matter of law, that the five-cent piece introduced in evidence is lawful money of the United States, and a coin which is legal tender in payment of debts up to the amount of $10, and if they find and believe that on or about February 2, 1901, while plaintiff was a passenger on one of defendant's cars he tendered said five-cent piece in payment of his fare, to defendant's conductor in charge of said car, and that said conductor refused to accept or to

receive the same, but demanded of plaintiff that he pay his fare with another coin or with other money, then the jury are instructed that it was the duty of said conductor to receive and accept said coin, and plaintiff was justified in refusing to alight from said car, and such action by plaintiff without more did not constitute a breach of the peace within the meaning of the municipal ordinance read in evidence.

"7. The court instructs the jury that if three-fourths of their number concur in a result the jury may return that result as the verdict of the jury, in which event all of the jurors who agree to it shall sign the verdict. If, however, the entire twelve jurors concur in a verdict, the foreman alone may sign it."

For the defendant as follows:

"The court instructs the jury that if they find from the evidence that plaintiff, after his controversy with defendant's conductor, and after said conductor had refused to accept the fare tendered by him, and after said conductor had requested him to leave the car, refused so to do unless he were arrested, and so refused for the purpose of being arrested, then plaintiff can not recover in this action, even though said arrest was wrongful and without probable cause.

"The court instructs the jury that plaintiff is not entitled to recover any damages for injuries sustained by reason of the publication in the newspapers of accounts of his arrest and prosecution."

Plaintiff prayed for $1,000 actual and $1,000 punitive damages.

The verdict was as follows:

"We the jury in the above entitled cause do find in favor of plaintiff, and assess his actual damages at the sum of one thousand dollars, and we assess his punitive damages at the sum of one thousand dollars."

Defendant filed a timely motion for new trial and in arrest of judgment, which was overruled; whereupon defendant appealed.

*Boyle, Priest & Lehmann* and *Lon O. Hocker* for appellant.

(1) The plaintiff, under the whole evidence, was not entitled to recover. The facts in the case are practically undisputed and the conclusion to be drawn from them is, therefore, one of law for the court. These facts do not show a want of probable cause, and do show an absolute want of malice; both being essential to recovery, the plaintiff's case must fail. Meysenberg v. Engelke, 18 Mo. App. 351. (2) The court erred in failing to instruct the jury as to what constituted a want of probable cause, and in allowing the jury to determine for itself without guide or limitation what constituted a want of probable cause. Meysenberg v. Engelke, 18 Mo. App. 352. The court erred in instruction 6, in stating facts which did not constitute guilt upon plaintiff's part, as not guilt but the reasonable appearance of guilt was the issue. Meysenberg v. Engelke, 18 Mo. App. 352. (3) Plaintiff's instructions 2 and 3 were erroneous in referring the jury to the pleadings for its information as to the acts of defendant and the proceedings alleged to have been instituted by it. Grant v. Railway, 25 Mo. App. 227; Butcher v. Death, 15 Mo. 274; Shaw v. Dairy Co., 56 Mo. App. 526; Proctor v. Loomis, 35 Mo. App. 488; Fleischmann v. Miller. 38 Mo. App. 181; Crocker v. Crocker, 2 Mo. App. 458. (4) The court erred in admitting all of the testimony of witness Dyer, as all of it was incompetent. (5) Under the facts in this case the court was not justified in stating to the jury, as it did in instruction 4, given for plaintiff, that they were at liberty to infer the existence of malice from the want of probable cause, the evidence all showing that the arrest, if wrongful, was so through ignorance and not through malice. Sharpe v. Johnston, 59 Mo. 557; Sharpe v. Johnston, 76 Mo. 661; McGarry v. Ry., 36 Mo. App. 346; Grant v. Reinhardt, 33 Mo. App.

74; Smith v. Barnes, 106 Mo. 100; Vansickle v. Brown, 68 Mo. 627.

*Schulenburg & Meyer* for respondent.

(1)   The elements necessary to a recovery in an action for malicious prosecution are: First.   The institution or prosecution by the defendant of the proceedings complained of.   Second.   The final determination of the proceedings in favor of plaintiff.   Third.   Want of probable cause on the part of defendant to believe plaintiff guilty of the offense charged.   Fourth.   Malice on the part of defendant in instituting or continuing the prosecution of plaintiff; all of which elements are presented by this record in the evidence and the instructions of the trial court.   McGarry v. Railway, 36 Mo. App. 340.   In a legal sense any unlawful act which is done willfully and purposely to the injury of another is, as against that person, malicious.   In actions for malicious prosecutions, the malice may be a mere wanton or careless disregard for the rights of others, or it may be the doing of the acts complained of without that ordinary prudence and discretion which persons of sufficient age and sound mind are presumed to have.   14 Am. and Eng. Ency. of Law (1 Ed.), p. 22.   Malice does not necessarily mean alone that state of mind which must proceed from a spiteful, revengeful or vindictive disposition but includes as well that which proceeds from an ill-regulated mind, not sufficiently cautious and recklessly bent on the attainment of some desired end, although it may inflict wanton injury on another. Brewer v. Jacobs, 22 Fed. Rep. 217.   (2)   Under the evidence in this case not only was malice in law on the part of defendant shown sufficient to sustain the action, but express malice or malice in fact was clearly indicated by the action of defendant in proceeding to carry on the prosecution of plaintiff after it had learned from the conductor all the facts and had an opportunity

of dropping the matter.    It is sufficient to show that the prosecution was either commenced or was continued maliciously.    Finley v. St. L. Ref. & W. G. Co., 99 Mo. 559; Christian v. Hanna, 58 Mo. App. 37.    (3)    There was no error in the instruction on probable cause or what constituted a want of probable cause.    Plaintiff's various instructions followed the forms repeatedly passed upon and approved by the appellate courts of this State and particularly by this court in the case of McGarry v. Railway, 36 Mo. App. 346. Plaintiff offered an instruction requesting the court to charge the jury that the conceded facts in the case did not amount to proof of the offense charged, which instruction (plaintiff's instruction 6) was given.    Defendant offered but one instruction covering the specific facts under its theory as to the existence of probable cause, which instruction was properly refused for reasons elsewhere pointed out.    In the absence of a request by defendant to correctly charge the jury what facts, if found, would amount to probable cause, a failure by the court to do more than instruct on the question in general terms is mere non-direction and not error.    Thomas v. Smith, 51 Mo. App. 614; (distinguishing Meysenburg v. Engelke, 18 Mo. App. 354; Callahan v. Cafferata, 39 Mo. 136.    (4)    Under such circumstances and where the jury would be justified in finding all the facts in the petition, the proof being as broad as the allegations, it is always permissible for the purpose of shortening an instruction to refer the jury to the pleadings.    Cocker v. Cocker, 2 Mo. App. 458; Edelman v. St. Louis Transfer Co., 3 Mo. App. 503; Corrister v. Railroad, 25 Mo. App. 619; Obert v. Strube, 51 Mo. App. 621; McGarry v. Railroad, 36 Mo. App. 346.    (5)    Defendant's first instruction was properly refused.    The facts contained in the hypothesis which discloses defendant's theory of this case even if true, did not amount to probable cause for instituting and carrying on the proceedings against plaintiff, and it was the duty of the court to declare the

facts set forth in the instruction insufficient. The instruction was erroneous because it did not require the jury to find a belief on the part of the conductor in the guilt of plaintiff of the charge of disturbing the peace. Staley v. Turner, 21 Mo. App. 254; Callahan v. Cafferata, 39 Mo. 136. (6) The instruction was erroneous because it utterly ignored the liability of defendant for proceeding with the prosecution after the conductor, with the police officer in charge of plaintiff, had visited the company's office and after the conductor had made a full report of the matter. Christian v. Hanna, 58 Mo. App. 37. (7) The discharge of a defendant upon preliminary examination by a committing magistrate is prima facie, even very persuasive, evidence that the prosecution was without probable cause. "The magistrate has the very question of probable cause to try; and the evidence on the side of the prosecution is alone examined and the proceeding is entirely ex parte." Brant v. Higgins, 10 Mo. 728; Casperson v. Sproule, 39 Mo. 39; Callahan v. Cafferata, 39 Mo. 136; Sappington v. Watson, 50 Mo. 83; Sharpe v. Johnston, 59 Mo. 557; Sharpe v. Johnston, 76 Mo. 660; Eagleton v. Kabrich, 66 Mo. App. 236. (8) On principle there can be no distinction between the discharge of plaintiff by the first tribunal before which he can be taken on the evidence of the prosecution alone in cases of an alleged violation of a municipal ordinance, and a similar discharge by the magistrate in cases of misdemeanor or felony. Coffey v. Myers, 84 Ind. 105; Zebley v. Storey, 12 Atl. Rep. 569; Lynch v. Railway, 90 N. Y. 77.

BLAND, P. J.—1. Defendant requested instructions in the nature of a demurrer to the evidence, which were by the court refused. This ruling is assigned as error.

On a demurrer to the evidence that construction and weight must be given to the evidence which is most favorable to the plaintiff; and if in its entire scope it

tends to prove the facts necessary to make out the plaintiff's case, the cause should be submitted to the jury. Bank v. Simpson, 152 Mo. 638; Young v. Webb City, 150 Mo. 333; Baird v. Railroad, 146 Mo. 265; Keown v. Railway, 141 Mo. 86; Roe v. Annan, 80 Mo. App. (K. C.) 198; Kattlemann v. Fire Ass'n, 79 Mo. App. (K. C.) 447.

Proof, or evidence tending to prove, the following facts are essential to authorize the submission of a cause for malicious prosecution to a jury:

First. The institution or prosecution by the defendant of the proceedings complained of.

Second. That the proceedings have finally terminated in favor of the plaintiff.

Third. Want of probable cause on the part of defendant to believe plaintiff guilty of the offense charged.

Fourth. Malice on the part of defendant in instituting or continuing the prosecution.

The conductor was expressly authorized by the defendant to call in a policeman in case of trouble on his car by the rule of defendant read in evidence. He was, therefore, acting within the scope of his authority when he caused the arrest of plaintiff and preferred the charge of disturbing the peace against him. His acts, therefore, in proceeding against plaintiff, were the acts of the defendant.

The institution and prosecution of proceedings against plaintiff before the police justice, and that he was discharged, are undisputed facts. That plaintiff had not violated the city ordinance, with the infraction of which he was charged, is clearly shown by the evidence of the conductor who first preferred the charge, and that there was no probable cause to believe him guilty is shown by the evidence of the same witness. There is, therefore, undubitable evidence of the existence of the first, second and third elements necessary

to make out a case of malicious prosecution.   Is there any evidence of the remaining essential ingredient, to-wit, malice?

The law makes no inference of the existence or non-existence of malice in this character of a suit, only in exceptional cases, but leaves it to the jury to find malice from all the facts and circumstances in evidence under proper instructions; and where there is any evidence that the prosecution was malicious, the plaintiff is entitled to have the issues submitted to the jury.

After the arrest on the advice of the captain of police, the plaintiff was taken by the officer in company with the conductor to Minary, who was a boss over the conductor.   The rejected nickel was shown him and all the facts preceding the arrest and the cause of the arrest were related to him truthfully by the conductor. Minary then had a telephonic communication with some one and turned to the conductor and police officer and ordered a charge of disturbing the peace to be made against the plaintiff.   We think this evidence tends to prove express malice (Stubbs v. Mulholland et al., 168 Mo. 47), but if it is not sufficient to prove express malice, legal malice may be inferred from the fact that the prosecution was intentional, wrongful and without justification or excuse.   Buckley v. Knapp, 48 Mo. loc. cit. 160; McGarry v. Railroad, 36 Mo. App. (St. L.) loc. cit. 346; State v. Grassle, 74 Mo. App. (St. L.) 313.   And we conclude that the court did not err in refusing to take the case from the jury.

The instructions given for the plaintiff correctly declared the law of the case and are approved.

The defendant asked the following instruction, which the court refused.

"If the jury believe from the evidence that the coin tendered by plaintiff in payment of his fare was so worn as to lead the conductor, in the exercise of ordinary care and judgment, to believe that the same was not a coin of its full face value, and that said conductor, in good

faith, for that reason; declined to accept said coin in payment of plaintiff's fare, then said conductor had a right to decline said coin and it was the plaintiff's duty to tender a coin, or other money, of apparent full face value or to leave defendant's car upon being requested so to do by said conductor; and even if the jury should find from the evidence that the conductor was mistaken and the coin tendered by plaintiff was a good and sufficient coin, and of its full face value, this did not authorize the plaintiff to attempt to remain upon the car without the payment of his fare in other money, or to become boisterous and disorderly upon the car; and if you find from the evidence that the plaintiff refused to pay his fare in any other money than said worn coin, or to leave said car, then said conductor had a lawful right to eject him from the car, using for that purpose only such force as was reasonably necessary to effect that end; and if you further believe from the evidence that while said conductor was attempting to eject said plaintiff, said plaintiff resisted and thereby became disorderly and disturbed the peace of the other passengers on said car, then said conductor had reasonable cause to have him arrested and said plaintiff can not recover from defendant for either the arrest or the prosecution.''

It is not the law that where a passenger on a street car tenders the exact amount of his fare in a legal tender coin that the conductor has a right to refuse to accept the same because he honestly believes it not to be a good coin and demand payment in other coin, and if the passenger refuses to pay it in other money, then to eject him from the car. On the contrary, the passenger in such circumstances has a right to remain on the car, and if he is forcibly ejected, has his recourse on the company for damages, and we think the instruction was properly refused.

Defendant asked other instructions which were refused that went to the measure of damages.

Vol 98 app—2.

In an action for malicious prosecution, compensation may be recovered for every injury caused by the arrest, imprisonment and prosecution, including loss of time, attorney's fees paid out to procure plaintiff's acquittal or release, and for injuries to the feelings and reputation. 2 Sedgwick on Damages (8 Ed.), secs. 458, 459.

The refused instructions excluded most of these elements that enter into the estimate of damages in this character of action and were properly refused.

The sixth refused instruction asked by defendant is as follows:

"6. The court instructs the jury that even should they believe from the evidence that plaintiff was acquitted in the police court on the charge of disturbing the peace, still such acquittal does not raise the presumption in this case that said arrest and prosecution were malicious and without probable cause on the part of said defendant, and said plaintiff must in this case prove by the preponderance or greater weight of the evidence, that such charges are true."

The instruction is correct as a legal proposition. Day v. Graham, 97 Mo. loc. cit. 398; Williams v. Vanmeter, 8 Mo. 339. Its refusal in this case, however, was not prejudicial error for the reason that the evidence offered by the defendant as well as that offered by the plaintiff shows not only that the plaintiff was not guilty of a disturbance of the peace, but that there was no reasonable ground upon which a reasonable and cautious person could for an instant believe him to be guilty.

3. It is contended that the case is not one in which exemplary damages should be allowed. Exemplary damages are not given in every action for tort. They are allowed as a punishment for the wrong done, and are allowed only when the tortious act was willfully or wantonly done. The motive accompanying the act must be wrong. 1 Sedgwick on Damages (8 Ed.), sec. 363. They are not, therefore, allowable in actions for ma-

licious prosecution unless there is proof of express malice, and the court substantially so instructed the jury, and we think there was substantial evidence upon which to hypothecate the instruction.

4.   It was agreed by both parties that the genuineness of the nickel in question was for the court to determine as a matter of law.   David P. Dyer, Jr., a teller in the United States sub-treasury in St. Louis, was permitted to testify as to the appearance, etc., of the nickel. Defendant objected to his testimony on the ground that the evidence was irrelevant and immaterial.   The overruling of this objection is assigned as error.   The objection is too general to require consideration and we think the defendant waived the objection by introducing the same character of evidence in its defense.

5.   Finally, defendant insists that the damages are excessive.   The only expense the plaintiff was put to in defending himself against the criminal charge was ten dollars attorney's fee and three dollars and fifty cents for bond.   His loss of time was less than one day, and there was no evidence as to the value of his time; but as he was a business man, it is to be presumed that his time was worth something.   There is no direct evidence that he suffered any pain of mind, nor any that his reputation was damaged.   It appears from the evidence that rather than leave the car at the request of the conductor, or to be forcibly put off by him, he chose to be arrested by an officer.   The arrest, therefore, had no terror for him, nor could he have felt any great humiliation on account of it.   The actual damages on account of the arrest and prosecution were slight, and it seems to us that the damages assessed both as compensatory and exemplary are vindictive and in excess of what is reasonable and right.   One thousand dollars we think will fully compensate the plaintiff for the actual damage and sufficiently punish the defendant for the wrong committed.

The judgment is reversed and the cause remanded for retrial, unless within ten days from the date of the filing of this opinion, plaintiff files in this court his remittitur of one thousand dollars of the judgment. If such remittitur be filed within the time allowed, the judgment will stand affirmed. All concur.