Louis **PALERMO**, Plaintiff-Respondent,

v.

Mel **COTTOM** et al., Defendants,

**Lawrence Perry and Roger Links, Defendants-Appellants.**

No. 35545.

Missouri Court of Appeals, St. Louis District, Division One.

May 20, 1975.

Motion for Rehearing or Transfer Denied June 26, 1975.

Application to Transfer Denied Sept. 8, 1975.

John T. Sluggett, III, Clayton, for defendants-appellants.

Shaw & Howlett, Joseph Howlett, Terry Flanagan, Clayton, for plaintiff-respondent.

RENDLEN, Judge.

Defendants Perry and Links appeal from judgment in a malicious prosecution action awarding $1,000 actual damages against defendants jointly and punitive damages of $2,000 against Perry and $100 against Links.

Defendants contend the court erred: (1) in refusing to direct a defendants' verdict on plaintiff's failure to make a submissible case; (2) in failing to declare a mistrial following plaintiff's injection of prejudicial, non-responsive testimony; and (3) by its failure to grant a mistrial after making certain comments indicating the court's partiality, irritability and impatience.

Plaintiff claims defendants maliciously instigated a criminal charge against him of willful and unlawful interference with police officers while in performance of their official duties. Defendant Perry executed an affidavit relative to this charge which led to the information and criminal proceedings against Palermo (plaintiff-respondent here) in the Magistrate Court of St. Louis County. That case ended in mistrial when the jury failed to agree upon a verdict and was dismissed by the prosecutor's office.

"Actions for malicious prosecution are not favorites of the law . . . Among the reasons assigned therefor is a sound public policy under which the public's interest in peace and good order exact of an individual citizen for the benefit of the public at large certain requirements that citizens be not deterred by a fear of unpredictable consequences from a bona fide resort to the duly constituted authorities and tribunals for the vindication of the interests of society in matters of public justice." *Bonzo v. Kroger Grocery & Baking Co.*, 344 Mo. 127, 125 S.W.2d 75, 79 (Mo.1939). However, the disfavor with which the action is viewed on policy grounds requires only a strict construction of the elements of the cause and does not work a destruction of the tort. The disgrace and impairment of reputation of the victim of malicious prosecution is just as serious to him as it is to one who suffers the disgrace of defamation, and a petition with just grounds will be heard.

*Randol v. Kline's, Inc.,* 330 Mo. 343, 49 S.W.2d 112, 119 (1932). It is important to note that defendants in the present action do not enjoy immunity on the grounds of their positions as police officers. *Motley v. Dugan,* 191 S.W.2d 979, 982 (Mo.App.1945).

■ We consider first appellants' contention that plaintiff failed to make a submissible case and the trial court erred in failing to direct a verdict at the close of the evidence. As a general rule, where there are disputed facts, such that finding them in favor of plaintiff would sustain his cause, it is error for the trial court to direct a verdict against him. *Pinson v. Campbell,* 124 Mo.App. 260, 101 S.W. 621 (1907). The evidence is viewed in the light most favorable to plaintiff, *Huffstutler v. Coates,* 335 S.W.2d 70 (Mo.1960), with the benefit of all reasonable inferences that may be drawn in his favor, *McFarland v. Union Finance Co.,* 471 S.W.2d 497, 499 (Mo.App.1971), and defendants' evidence unfavorable to plaintiff will be disregarded. *Hughes v. Aetna Ins. Co.,* 261 S.W.2d 942, 945 (Mo.1953).

Plaintiff's testimony shows that on the evening of February 28, 1967, he made a business call at a tavern as part of his duties as district manager for Anheuser-Busch Brewery, and during the evening drank five "beers". He then drove to the Rite-Way Diner located in the Village of Marlborough, St. Louis County, and while driving from the tavern to the diner encountered no other automobile. After dinner at the Rite-Way he went to his car in the parking lot and defendant Perry, an officer of the Marlborough police force, approached and asked to see his driver's license. Plaintiff reached into his car to get his billfold and inadvertently picked up one of two billfolds which contained an athletic commissioner's badge. Defendant Perry asked what the badge was and plaintiff told him. After the billfold was handed to Perry, plaintiff testified that Perry said

"You're another one of those smart Dagos", and when asked again about this matter on direct examination, plaintiff testified that Perry called him a "Dago bastard". Plaintiff asked Perry why he was being interrogated and Perry advised there had been a complaint that while driving he had forced a car with two women off the highway. According to plaintiff he replied "You must be out of your mind, you saw me come out of the diner, just finished eating dinner." Then officer Perry placed him under arrest. At that time Perry called for assistance (apparently on his car radio) and shortly three other patrol cars arrived with officers of the Marlborough police force, including Chief of Police Mel Cottom [1] and defendant Roger Links. Some of the officers, including Chief Cottom, were in plain clothes and others uniformed. On the arrival of reinforcements plaintiff said "What in the hell is going on"; Chief Cottom showed his badge and said he was under arrest. Plaintiff took out a pencil to write down Cottom's badge number and as he did so, an unidentified officer grabbed his arm and in the process was "stuck" by plaintiff's pencil. The officer's hand was slightly pierced by the end of the pencil. Immediately plaintiff was picked up by defendants Perry and Links who held both hands behind his back. The pressure was painful and he kept saying "Leave me alone" and "kept yelling for help". At that time he was struck in the left eye [2] by one of the officers and to keep him from yelling someone put a hand over his mouth. As plaintiff described it, he was struck by an officer, "Then politely someone commenced to put their hand over my mouth to keep me from shouting" and "I bit him". Plaintiff believed this was officer Links though defendants testified that officer Perry put his hand over plaintiff's mouth and was bitten. Plaintiff was handcuffed, placed in the police car, taken to Marlborough City Hall by defendants Links, Perry and Cottom, thence

---

1. The action originally included Mel Cottom as a defendant but was dismissed as to him at the close of plaintiff's case.

2. Defendants' photographic exhibits show an injury to his right eye.

to the St. Louis County Hospital for treatment of his eye and finally to the County Jail in Clayton where he was booked, made bond and released.

Plaintiff testified that as a result of his treatment by the defendants his clothes were torn, he was bruised and his back injured, causing three days absence from work. He further testified that he never failed to follow directions given to him by the police officers during the altercation and though he admitted biting the officer's hand, he denied breaking the skin. Defendant Perry testified his hand was bleeding, had several puncture marks and went to the hospital to get "a tetanus shot for it".

Plaintiff's next witness, defendant Links, testified that while acting in his capacity as police officer he responded to the assistance call from officer Perry and arriving at the scene he found the plaintiff screaming, "calling names", "generally hollering", and Links attempted with little success to calm him. Links then assisted Perry in handcuffing plaintiff. Perry's testimony, and that of his witnesses, contradicts Palermo in most particulars.

Four days after the arrest, defendants Links and Perry appeared at the office of the St. Louis County Circuit Attorney where Perry signed an affidavit prepared by an assistant prosecutor leading to the criminal charges against Palermo (plaintiff-respondent here). Defendant Cottom, called as a witness by plaintiff, testified he had nothing to do with the issuance of the information in the criminal case and his motion for directed verdict at the close of plaintiff's case was sustained. No appeal is taken from that judgment of the trial court.

■ The elements of a cause for malicious prosecution are: (1) commencement of prosecution of the proceedings against the present plaintiff; (2) its legal causation by the present defendant; (3) its termination in favor of the present plaintiff; (4) absence of probable cause for such proceedings; (5) the presence of malice therein; (6) damage to plaintiff by reason thereof. *McFarland v. Union Finance Co., supra,* 471 S.W.2d at 499; *Hoene v. Assn. Dry Goods Corp.,* 487 S.W.2d 479, 483 (Mo.1972). Of these six elements defendants challenge the sufficiency of plaintiff's proof as to the second, third, fourth and fifth elements.

■ A person's acts may be the legal cause of prosecution if instituted at his insistence and request. It is sufficient if his action takes the form of an affidavit on which the case is based, regardless of further participation in the prosecution. *Ruth v. St. Louis Transit Co.,* 98 Mo.App. 1, 71 S.W. 1055 (1903); 52 Am.Jur.2d, Malicious Prosecution, § 24. To impose liability there must be affirmative action by way of advice, encouragement, pressure or something similar in the institution, or causing the institution of the prosecution. *Coffman v. Shell Petroleum Co.,* 228 Mo.App. 727, 71 S.W.2d 97, 103 (1934). Mere giving of honest assistance and information which leads to a prosecution does not necessarily render a person liable as an instigator of that prosecution, *Pride v. Lamberg,* 366 S.W.2d 441 (Mo.1963), *Hunter v. Karchmer,* 285 S.W.2d 918 (Mo.App.1955), although he may be liable for giving false information to the person prosecuting. 54 C.J.S. Malicious Prosecution, §§ 13–15. See *LaFont v. Richardson,* 119 S.W.2d 25, 29 (Mo.App.1938).

■ With respect to defendant Links' activities following the arrest, there is no evidence he did anything other than accompany Perry to the prosecutor's office and, under mandate of subpoena, testify at the criminal trial. He signed no affidavit and made no statement to the prosecutor. The elements of malicious prosecution must be strictly construed, *Higgins v. Knickmeyer-Fleer Realty & Inv. Co.,* 335 Mo. 1010, 74 S.W.2d 805 (1934), and the record is insufficient to show that Links filed criminal charges or influenced Perry to do so. Though we view the evidence in the light most favorable to plaintiff, we are unable to reasonably draw an inference of instigation or legal causation attributable to Links

and hold that plaintiff has not sustained the burden of showing that defendant Links was the legal cause of the criminal prosecution. To render one liable for malicious prosecution begun by another it must appear that he was the proximate and efficient cause of putting the law in motion. There must be proof of some affirmative act in connection with the prosecution and only defendant Perry took such action. The fact that one urges the institution of proceedings is insufficient to render him liable if the prosecuting witness was not influenced by such promptings. Mere passive knowledge of or acquiescence in the acts of another is not sufficient. *Bellington v. Clevenger,* 228 S.W.2d 817, 818 (Mo.App. 1950). Nothing in the record shows Links instigated, urged or recommended institution of the action. The evidence shows he believed and agreed with the statements in Perry's affidavit but this constitutes passive acquiescence, not instigation. His appearance at the magistrate court tells nothing more than obedience to the subpoena and the record discloses nothing of the testimony in that proceeding. Plaintiff failed to make a submissible case against defendant Links and the court erred in failing to sustain his motion for directed verdict. The judgment is reversed as to defendant Links.

We now consider Perry's contentions of insufficient proof as to certain elements of malicious prosecution.

■ Concerning causation or instigation (element # 2), Perry, on his own initiative, filed a sworn affidavit with the prosecuting attorney of St. Louis County, charging plaintiff with particular criminal acts. This led to the subsequent criminal trial and is sufficient to satisfy the proof requirements for legal causation or instigation as to this defendant.

■ He next contends plaintiff's proof failed as to the third element, i. e., termination of the criminal prosecution in favor of the present plaintiff. Though the criminal action against Palermo was dismissed on motion of the prosecuting attorney without knowledge or consent of the defendants, the fact surrounding the dismissal marks the termination of the case in Palermo's favor. The evidence is sufficient for submissibility of this element to the jury. *La-Chance v. National Pigments & Chemical Co.,* 104 S.W.2d 693, 697–698 (Mo.App.1937). In oral argument defendant cited *Tucker v. Duncan,* 499 F.2d 963 (4th Cir., 1974), for the proposition that there is no action for malicious prosecution when the prosecutor enters his motion of *nolle prosequi.* However, *Tucker* involved a dismissal "induced and brought about" by the party being prosecuted and thus is distinguishable from the case at bar.

■ The next element challenged by defendant Perry is the absence of probable cause for the original criminal proceedings against Palermo. Probable cause for initiating the prosecution is defined as reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious man in his belief that the person accused is guilty of the offense charged. *LaFont v. Richardson, supra; Higgins v. Knickmeyer-Fleer, supra; Hughes v. Aetna Ins. Co., supra.* Probable cause is reasonable cause, not necessarily actual cause. We must consider the facts as the prosecuting party could have reasonably believed them to be under the circumstances at the time. *Lindsay v. Evans,* 174 S.W.2d 390, 396 (Mo.App.1943). Since want of probable cause involves a negative, only slight proof is necessary to make a prima facie case. *Hughes v. Aetna Ins. Co., supra,* 261 S.W.2d at 945. Defendant Perry's contention that he observed the facts and knew Palermo committed the acts complained of is in conflict with Palermo's testimony; Palermo claims, in effect, the facts are not as stated by Perry in his affidavit, that he did not unlawfully interfere with Perry's investigation of a reported crime and therefore Perry had no cause to file the affidavit. Where conflict appears in material evidence relied on to constitute probable cause, it becomes a jury question and a submissi-

ble case is made. *Jones v. Phillips Petroleum Co.,* 186 S.W.2d 868, 875 (Mo.App.1945); *Hoene v. Assn. Dry Goods Corp., supra,* 487 S.W.2d at [7]; *Pinson v. Campbell, supra,* 101 S.W. at 624. In view of the conflicting testimony on the events of February 28, 1967, the court did not err in refusing to direct a verdict for defendant Perry on the issue of probable cause.

Perry also claims there was no showing of malice sufficient to support plaintiff's action. Malice as an element of malicious prosecution is defined as the intentional doing of a wrongful act without legal justification and may be inferred from the absence of probable cause. It does not necessarily involve hatred or ill will. *Beatty v. Puritan Cosmetic Co.,* 236 Mo.App. 807, 158 S.W.2d 191, 196 (1942). Taking those facts favorable to plaintiff, the trial court properly ruled this contention against defendant Perry on his motion for directed verdict and there was sufficient evidence for the jury to conclude that Perry instituted the proceedings without legal justification and from that infer malice. *LaFont v. Richardson, supra,* 119 S.W.2d at 29; *Hoene v. Ass. Dry Goods Corp., supra,* 487 S.W.2d at 483.

Plaintiff's evidence, taken as true, presented a submissible case for malicious prosecution as to defendant Perry and the court did not err in refusing his motion for directed verdict.

Defendants further contend error in the trial court's failure to declare a mistrial when plaintiff referred to pictures of his wife and children. On direct examination plaintiff was asked if he left any personal belongings in his car parked outside the Rite-Way Diner, to which plaintiff responded:

"My billfold, [in] which I carry an athletic commissioner's badge, pictures of my children and wife, and another billfold which has my credit cards and calling cards from the brewery."

Defendants' counsel objected and requested a mistrial which was denied; he then requested an instruction that the jury disregard that portion of the answer relative to the pictures of plaintiff's wife and children. The court informed the jury that he was striking the response concerning the pictures of plaintiff's wife and children but did not specifically instruct them to disregard the evidence. Defendants, in support of their contention, cite *Donze v. Swofford,* 368 S.W.2d 917 (Mo.App.1963), a personal injury suit. There plaintiff's counsel asked how many children plaintiff had, defendant objected and the trial court overruled the objection, permitting the testimony to be given. In reversing the judgment, this court noted that the action of the trial court in effect told the jury it was permissible to consider irrelevant evidence, making it impossible to say the error did not affect the merits of the case. However, in *Bush v. Anderson,* 360 S.W.2d 251, 255 (Mo.App. 1962), the court stated that "Such evidence, even though inadmissible, does not always constitute reversible error where it appears that such evidence has not affected the merits of the action." *Brown v. Parker,* 375 S.W.2d 594, 601 (Mo.App.1964), reflects the general rule that evidence of family status or the number of people in the family unit is inadmissible except where relevant or pertinent to the issues raised. But ". . . where improper evidence comes into the case through a voluntary statement of a witness, a mistrial is not a matter of right but is a question calling for the exercise of a sound discretion by the trial court, and in the absence of an abuse of that discretion we cannot interfere . . . Certainly this should be true where the improper evidence comes into the case in response to a proper question." *Brown v. Parker, supra,* at 601. Family status evidence is disapproved on grounds it incites sympathy and prejudice in the jury for the plaintiff, but in this case defendant does not object that the awarded damages are excessive and it is therefore even more difficult to declare with certainty that defendant was preju-

diced. There was sufficient competent evidence on which the jury could have relied in reaching the verdict it did. The volunteered statement was the subject of an instruction to the jury, immediately after it was made, at the request of defendants' counsel. Though the court could well have directed the jury to "disregard the last answer of the witness", or by similar instruction more properly have corrected the problem, we nevertheless rule the instruction given cured whatever effect the statement had on the jury and the court did not abuse its discretion in refusing a mistrial.

■ Defendants' final contention is the court erred in failing to grant a mistrial following an allegedly "prejudicial" and "inflammatory" statement by the judge, made in the presence of the jury, indicating bias, impatience and irritability. Early in the cross examination of plaintiff, defendants' counsel attempted to impeach plaintiff by use of "Plaintiff's Exhibit A" (the magistrate court file in the criminal prosecution), asking if the names of certain witnesses appeared thereon. The court sustained an objection from plaintiff that the exhibit was its own best evidence and it was unnecessary to have the witness read it. In his next question defendants' counsel, in a somewhat different manner, asked about this matter and again an objection was sustained. Defendants' counsel pointed out this was cross examination, to which the judge responded "Give it to me. You're wasting my time." Defendant immediately moved for a mistrial. Though the court's remark was inappropriate, the apparent purpose of taking the exhibit and reading from it was to expedite the proceeding and by reading from the exhibit the court attempted to clarify for the jury matters which defendants' counsel had been developing by his cross examination of plaintiff. This may have had a less dramatic effect in impeaching plaintiff than defendant would have liked, but neither this fact nor the seemingly impatient statement of the court is sufficient to warrant declaration of mis-

trial nor reversal of the judgment as to defendant Perry.

Judgment reversed as to defendant Links and affirmed as to defendant Perry.

WEIER, P. J., and DOWD and CLEMENS, JJ., concur.