622 F.Supp. 520 (1985)
Soung O. KWOUN, et al., Plaintiffs,
v.
SOUTHEAST MISSOURI PROFESSIONAL STANDARDS REVIEW ORGANIZATION, et al., Defendants.
No. S84-259C(D).
United States District Court, E.D. Missouri, Southeastern Division.
September 19, 1985.
*521 *522 *523 George L. Fitzsimmons, Fitzsimmons & McMichael, P.C., Clayton, Mo., John C. Rasp, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for Sandler, Legan and other defendants.
Bruce Granger, (of counsel for Deputy Regional Atty.) Kansas City, Mo., Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for Federal defendants.
Richard R. Kordenbrock, Brinker, Doyen & Kovacs P.C., Clayton, Mo., for Bregant.
Christopher J. Holthaus, Stephen H. Gilmore, St. Louis, Mo., Irwin M. Roitman, Clayton, Mo., for plaintiffs.
William L. Webster, Atty. Gen., Jerry L. Short, Asst. Atty Gen., Jefferson City, Mo., for Clark.

MEMORANDUM
WANGELIN, District Judge.
This matter is before the Court upon six separate motions to dismiss the abovestyled action or, in the alternative, for summary judgment. Said motions were brought by defendants Howard, Nicholson, Kram, and Secretary of Health and Human Services; defendants Southeast Missouri Professional Standards Review Organization (SEMO PSRO) and named physicians (SEMO Doctors); defendant Legaspi and defendant Bregant. Each of the above named defendants incorporate Defendants' Suggestions in Support of Motions of defendant SEMO PSRO and others to dismiss or, in the alternative, for summary judgment filed with this Court January 18, 1985 as argument in support of their individual and collective motions.

FACTUAL BACKGROUND
Plaintiffs' cause of action arises out of an initial determination by the Health Care Financing Administration (hereinafter HCFA), which is a branch of the Department of Health and Human Services, to exclude the plaintiff from the medicare reimbursement program. The plaintiff was notified on September 11, 1981 that the agency was suspending his receipt of reimbursement under the Medicare Program pending any administrative appeals pursuant to 42 U.S.C. § 1320c.
Plaintiff subsequently filed an action before Administrative Law Judge Francis J. Eyerman. The ALJ exonerated plaintiff Dr. Kwoun from all accusations against him. Plaintiffs filed this action alleging defendants' conduct in the above mentioned proceedings constituted violations of 42 U.S.C. § 1981 (Count I); 42 U.S.C. § 1985(2) (Count II); 42 U.S.C. § 1985(3) (Count III); and the Fifth Amendment (Count IV). Plaintiffs' further assert tort claims for malicious prosecution (Count V); intentional infliction of emotional distress (Count VI); and prima facie tort (Count VII).
In determining the sufficiency of a complaint in the face of a motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6), the accepted rule as articulated by the United States Supreme Court is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). If, on a motion to dismiss or a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as *524 provided in Rule 56. Fed.R.Civ.P. 12(c). Under Rule 56,
[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
Defendants appear to raise challenges under both Rule 12(b)(6) and Rule 56(c), and accordingly, to the extent that the Court will consider matters outside the pleadings on a given claim, the ruling shall be based on Rule 56(c).

A.
Defendants' first ground for dismissal is that the three corporate plaintiffs do not have a cause of action in that the complaint only alleged claims by plaintiff Kwoun not the three corporate plaintiffs. Defendants further assert that because the corporate plaintiffs are not members of a race, they cannot assert a cause of action under 42 U.S.C. §§ 1981 or 1985. Moreover, defendants assert that because no sanctions were brought against the corporate plaintiffs, they have no cause of action for denial of equal protection or due process or a claim for malicious prosecution.
Defendants' motion to dismiss for failure to state a cause of action as to three corporate plaintiffs must be denied. The complaint regarding these three plaintiffs is sufficient since it "... contains allegations from which an inference fairly may be drawn that evidence of material points will be introduced at trial." 5 Wright & Miller, Federal Practice & Procedure, § 1216 at 122-123 (1969). Moreover, corporations may file claims under 42 U.S.C. § 1981 as well as § 1985 and the United States Constitution. Des Vergners v. Seekonk Water District, 601 F.2d 9 (1st Cir. 1979). The relationship between plaintiff Kwoun and each of the corporate plaintiffs is articulated in the Amended Complaint. In each instance, plaintiff Kwoun is either the principal stockholder or trustee of the plaintiff corporations and the plaintiff corporations are or have provided medical service. Given the possibility of alleged harm to plaintiff Kwoun, this Court finds that there is an inference that the plaintiff corporations in which plaintiff Kwoun was involved were also injured.
Thus, because the corporate plaintiffs may have been damaged by defendants' actions and because corporations are persons for purposes of civil rights and Fifth Amendment claims, the corporate plaintiffs do have a cause of action and defendants' motion to dismiss will be denied.

B.
Next, defendants assert that defendant SEMO doctors should be dismissed because defendant SEMO PSRO is a Missouri not-for-profit corporation which can be sued in its corporate name and that the inclusion of defendants SEMO doctors is surplusage. This contention also fails.
Corporate officers and directors have personal liability under the federal civil rights acts if they intentionally cause a corporation to infringe on the rights secured by those acts. Tillman v. Wheaton-Haven Recreation Association, 517 F.2d 1141, 1146 (4th Cir.1975). In Clark v. Universal Builders, Inc., 501 F.2d 324 (1974), the Seventh Circuit found that the concept of separate identity between shareholders, directors, and officers and their corporations is not sacrosanct. It demands even less respect if it becomes clear that the corporation is used as a shield to violate the civil rights of others. Id. at 340 n. 23. Plaintiffs' amended complaint alleges that defendant doctors through defendant *525 SEMO PRSO have abridged plaintiffs' civil rights. As such plaintiffs' amended complaint is sufficient to state a cause of action against both defendant SEMO PRSO and defendant SEMO doctors.

C.
Defendants' next contention is that plaintiffs' claim under 42 U.S.C. §§ 1981, 1985(2), 1985(3), the Fifth Amendment, and their state claims are precluded by the Medicare Act. In support of this contention defendants cite Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).
In Middlesex County Sewerage Authority the Court determined that when remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate Congressional intent to preclude the remedy of suits under the civil rights acts. Id. at 20, 101 S.Ct. at 2626.
The scope of the preclusion provision has engendered much litigation and little consensus. It is agreed by all of the circuits that the central target of a Section 405(h) preclusion is "any action envisioning recovery on any claim emanating from" the Medicare Act. Association of American Medical Colleges v. Califano, 569 F.2d 101, 107 (D.C.Cir.1977).
The holding in Middlesex County Sewerage Authority created a narrow exception to the Supreme Court's 1981 holding in Main v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) that 42 U.S.C. § 1983 authorizes a cause of action for violations of federal statutory rights. The Court in Middlesex was concerned that administrative procedures contained in particular statutes should not be circumvented. Middlesex, 453 U.S. at 20, 101 S.Ct. at 2626.
Defendants cite V.N.A. of Greater Tift City, Inc. v. Heckler, 711 F.2d 1020 (11th Cir.1983) for the proposition of the Medicare Acts' exclusivity. While defendants correctly state the principle of V.N.A. of Greater Tift City, Inc., the facts here are distinguishable. In V.N.A. the plaintiffs' claims were seeking recovery on a claim directly related to provisions of the Act and the Court held that plaintiffs were limited to the provisions of the Act when seeking a remedy. Here, however, plaintiffs are alleging separate claims unrelated to the Act. The only connection between the Act and plaintiffs' claims is that plaintiffs' claims arose during other proceedings under the Act. Plaintiff Kwoun has availed himself of the remedies available under the Act for his claims under the Act. Now plaintiffs are seeking redress for alleged wrongs which arose separate and apart from the Act. Accordingly, defendants' assertion that the Medicare Act precludes plaintiffs' action is unfounded.

D.
Next, defendants seek to dismiss all of plaintiffs' civil rights claims contending that plaintiff Kwoun's attempt to mitigate as reflected in Kwoun v. Schweiker, 528 F.Supp. 1004 (E.D.Mo.1981) constitutes collateral estoppel.
The Eighth Circuit has continuously held that only a prior final judgment on the merits can have the effect of collateral estoppel. Oldham v. Pritchett, 599 F.2d 274, 276 n. 1 (8th Cir.1979); Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982). Further, a dismissal without prejudice operates to leave the parties as if no action had been brought at all. Moore v. St. Louis Music Supply, Inc., 539 F.2d 1191, 1194 (8th Cir.1976).
In Kwoun v. Schweiker, the Court specificly states that it will not consider the merits of plaintiffs' cause of action. 528 F.Supp. 1004 at 1008. Judge Nangle left open the possibility of reaching the merits of plaintiffs' cause of action if the situation arose where such consideration was appropriate. Id. Thus Kwoun v. Schweiker was not a decision on the merits and defendants' claim of collateral estoppel is without merit.

E.
Defendants next contend that because they are members of a PSRO they *526 are government officials and thus subject to a three year statute of limitations. Defendants rely on Smith v. North Louisiana Medical Review Assn., 735 F.2d 168 (5th Cir.1984). In Smith, the Fifth Circuit found that a PSRO is a federal entity because it is created by federal statute and performs a critical federal function of monitoring costs of services provided under the Medicare Act. Id. at 173.
However, an entity's status as a federal entity is controlled by Congress's intent in creating the organization. Recent cases have made it clear that any general definition of the term agency can be of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of the government done. The unavoidable fact is that each new arrangement must be examined anew and in its own context. Public Citizen Health v. Dept. Health, Ed., Etc., 668 F.2d 537, 542 (D.C.Cir.1981).
The Report of the Senate Committee on Finance on the Social Security Amendments of 1972, S.Rep. No. 92-1230, 92 Cong., 2nd Sess. (1972) provides a clear summary of Congress's intent as to the status PSRO's should have with respect to government versus private agency.
The committee believes that the review process should be based upon the premise that only physicians are, in general, qualified to judge whether services ordered by other physicians are necessary. The committee is aware of increasing instances of criticism directed at the use of insurance company personnel and government employees in reviewing the medical necessity of services. S.Rep, supra at 256.
The committee has therefore included an amendment, as it did in H.R. 17550, which authorizes the establishment of independent professional standards review organizations by means of which practicing physicians would assume responsibility for reviewing the appropriateness and quality of the services provided under medicare and medicaid.
The committee's bill provides specifically for the establishment of independent professional standards review organizations formed by organizations representing substantial numbers of practicing physicians in local areas to assume responsibility for the review of service (but not payments) provided through the medicare and medicaid programs. Id. at 257.
It is preferable and appropriate that organizations of professionals undertake review of members of their profession rather than for government to assume that role. The inquiry of the committee into medicare and medicaid indicates that government is ill equipped to assume adequate utilization review. Indeed, in the committee's opinion, government should not have to review medical determinations unless the medical profession evidences an unwillingness to properly assume the task. Id. at 258.
Priority in designation as a PSRO would be given to organizations established at local levels representing substantial numbers of practicing physicians who are willing and believed capable of progressively assuming responsibility for overall continuing review of institutional and outpatient care and services. Local sponsorship and operation should help engender confidence in the familiarity of the review group with norms of medical practice in the area as well as in their knowledge of available health care resources and facilities. Participation in a PSRO would be voluntary and open to every physician in the area. Id. at 259.
PSRO physicians engaged in the review of the medical necessity for hospital care and justification of need for continued hospital care must be active hospital staff members. The purpose here is to assure that only doctors knowledgeable in the provision and practice of hospital care will review such care. Id. at 260.
It is expected that a PSRO would operate in a manner which conserves and maximizes the productivity of physician review time without unduly imposing on his principal function, the provision of health care services to his own patients. Id. at 264.
*527 Employees of PSRO would be selected by the organization and would not be government employees. Id. at 266.
This Court finds that these expressions demonstrate the fixed purpose of Congress that PSRO's should be independent medical organizations operated by practicing physicians in the private sector, and not government agencies run by government employees. Public Citizen Health v. Dept. of Health Fed. etc., 668 F.2d 537, 543 (D.C. Cir.1981). A finding that defendant SEMO PSRO and defendant SEMO doctors make up a governmental agency would be inconsistant with the Congressional purpose.
As such, plaintiffs' claim provides a sound basis for applying the five year statute of limitations contained in MoRS § 516.120. Moreover, the Eighth Circuit has determined that the five year statute of limitations is applicable for actions brought under 42 U.S.C. § 1981. See Drake v. Southwestern Bell Telephone Co., 553 F.2d 1185 (8th Cir.1977).
The five-year Missouri statute, § 516.120 Mo.Ann.Stat., however, is applicable because a proceeding under § 1981 represents an action upon a liability implied, subd. 1; or an "action upon a liability created by a statute," subd. 2; or an action for "injury to the person or rights of another, not arising on contract and not herein otherwise enumerated," subd. 4. This Court need not decide which of these subdivisions covers this statutory action but the cases indicate that a § 1981 action properly fits the description of one or more subdivisions of § 516.120.
Id. at 1188.
Additionally, plaintiffs allege that the complained of actions constitute a continuing course of conduct and did not accrue at a specific isolated date. If plaintiffs' allegations are found to be true, no statute of limitation began to run until the date of the hearing before ALJ Eyerman. As such there is sufficient recent conduct to sustain a cause of action in this matter and defendants' motion to dismiss based upon the statute of limitations will be denied.

F.
Defendants Kram, Nicholson, and Howard assert sovereign immunity and seek to dismiss all claims against them. Defendants contend that they are entitled to absolute immunity because plaintiffs' claims arise from the initiation of administrative actions of a prosecutorial nature.
The Supreme Court has issued a clear description of the immunities available to federal officials in Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Without retracing the Supreme Court's steps, it is abundantly clear that federal officials cannot claim immunity if their actions are manifestly beyond their line of duty. Butz, supra at 484-85, 98 S.Ct. at 2899-2900.
In the present case, plaintiffs allege misconduct seemingly beyond the scope of defendants duty and authority. Plaintiffs cite the ALJ's finding that "the HCFA employees were involved in defendant SEMO PSRO's Sanction Report long before it was any of their business, even before it was issued by defendant SEMO PSRO and defendant SEMO doctors." This Court finds that reasonable minds could differ as to whether such activity is within defendants' scope of authority. Accordingly, defendants Kram, Nicholson, and Howard will not be dismissed based upon an absolute immunity theory.

G.
Defendants next seek to dismiss plaintiffs' claims under 42 U.S.C. § 1981 contending that plaintiffs have failed to plead a denial of any right protected by the act and have failed to plead detailed factual allegations showing the defendants' actions were racially motivated.
In a civil rights action, pleadings are to be liberally construed. Only when the plaintiff can prove no set of facts that would entitle him to relief is a district Court warranted in granting a motion to dismiss. Windsor v. Bethesda General Hospital, 523 F.2d 891, 893 (8th Cir.1975).
*528 Plaintiffs' complaint contends that plaintiff was denied participation in the Medicare program, subjected to abuses in connection with the sanction process and essentially deprived of income because of his race. Among the rights protected by 42 U.S.C. § 1981 are the right to earn a living without regard to one's race, to make contracts for education, to fair use and access to justice, and to participate in public benefits programs. See Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); Martinez v. Fox Valley Bus Lines, 17 F.Supp. 576 (N.D.Ill. 1936); Pennsylvania v. Local 542, 347 F.Supp. 268 (E.D.Penn.1972).
In Taylor v. Flint Osteopathic Hospital, Inc., 561 F.Supp. 1152 (E.D.Mich.1983) the Court denied defendant's motion to dismiss saying:
... Plaintiff's complaint appears to state a claim under § 1981 against the PSRO in as much as it alleges, in essence, that the PSRO acted in a discriminatory manner in performing its peer review functions and that PSRO's discriminatory conduct precluded plaintiff from performing his "contracts" with his patients and, ultimately, with FOH.
The PSRO's sole direct challenge to the § 1981 claim is that it is devoid of specific factual allegations that PSRO's treatment of plaintiff differed from their treatment of similarly situated white persons, as required by § 1981. This court having concluded, however, that the complaint fairly apprises the PSRO of the elements of plaintiffs claim under § 1981, the motion to dismiss this claim pursuant to F.R.Civ.P. 12(b)(6) is hereby denied.
Id. at 1159-60.
Defendants in this case are in no better position than defendant in Taylor. Plaintiffs have alleged actions taken which if true have deprived plaintiffs of rights protected by 42 U.S.C. § 1981. Further, plaintiff has alleged that the actions were motivated by plaintiff's race. Accordingly, this Court finds that plaintiff has stated a cause of action under 42 U.S.C. § 1981.

H.
Defendants next move to dismiss Count II of plaintiffs' complaint alleging a violation of 42 U.S.C. § 1985(2). Section 1985(2) relates to institutions and processes of federal judicial proceedings and conspiracies to obstruct the course of justice in state courts. Kush v. Rutledge, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). Moreover, § 1985(2) expressly requires force, intimidation, or threat against persons holding public office, witnesses, or jurors. Williams v. St. Joseph Hospital, 629 F.2d 448, 451 (7th Cir.1980).
There are no allegations regarding either federal courts or state courts in plaintiffs' complaint or amended complaint. Further, plaintiffs have not alleged that defendants ever subjected any person to any force, intimidation or threat. Accordingly, this Court will grant defendants' motion to dismiss Count II of plaintiffs' amended complaint.

I.
Defendants further contend that plaintiffs have failed to state a cause of action under 42 U.S.C. § 1985(3) claiming the amended complaint (1) fails to adequately allege the existence of a conspiracy, (2) fails to allege an invidiously discriminatory animus, and (3) fails to allege the deprivation of a constitutional right protected by § 1985(3).
Under Fed.R.Civ.P. 8, technical niceties of pleading are not required. Rather a short and plain summary of the facts sufficient to give fair notice of the claim asserted is sufficient. Means v. Wilson, 522 F.2d 833, 840 (8th Cir.1975). In addition, a complaint under 42 U.S.C. § 1985(3) must allege facts to show that intentional or invidious discrimination was the object of the conspiracy. Griffin v. *529 Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).
In Means v. Wilson, the complaint alleged that the defendant conspired with "private individuals" and two other named individuals to ensure defendant was reelected. Means v. Wilson, 522 F.2d at 840-41. Upon no more than the above, the Eighth Circuit found that the plaintiff had stated a cause of action under 42 U.S.C. § 1985(3). Id.
In the present case, plaintiffs have alleged that the named defendants "acted individually, together, and with others...." Such allegations fairly raises the inference of conspiracy. Following the president of Means, supra, the Court finds that plaintiffs' amended complaint, although inartfully drafted, does allege conspiracy sufficiently to state a claim under 42 U.S.C. § 1985(3).
Defendants' contention that the complaint fails to allege a class based animus is also without merit. The amended complaint alleges that plaintiff Kwoun is an Asian-American and that defendants subjected him to treatment different than that reserved for white persons. The amended complaint then enumerates all of plaintiffs' charges of how he was treated. This Court finds the pleadings sufficient to allege a class based animus and thus support a § 1985(3) cause of action.
Defendants' contention that plaintiffs § 1985(3) claim must fail because it lacks a constitutional predicate is also without merit. Case law supports plaintiffs' contention that 42 U.S.C. § 1981 provides a substantive basis for redress under § 1985(3). In Witten v. A.H. Smith and Co., 567 F.Supp. 1063 (D.Md.1983), Judge Miller examined the language of the statute, the general legislative history with regard to the rights for which a remedy is provides by § 1985(3), and the intent of the Forty Second Congress. Judge Miller concluded that 42 U.S.C. § 1981 is a proper substantive basis for a claim of redress under § 1985(3). Id. at 1072. This same position was taken in Miller v. St. Louis Theatrical Co., No. 83-2305C(1) (E.D.Mo. August 1, 1984).
As discussed, supra, this Court has determined that plaintiffs have raised a colorable claim under 42 U.S.C. § 1981. Accordingly, defendants' motion to dismiss plaintiffs' § 1985(3) claim will be denied.

J.
Defendants seek to dismiss plaintiffs' Count IV. Plaintiffs agree that defendant SEMO PSRO and defendant SEMO doctors are not federal officials subject to a claim under the Fifth Amendment. Accordingly, plaintiffs' Count IV will be dismissed with respect to defendant SEMO PSRO and defendant SEMO doctors.
Defendants Kram, Nicholson, and Howard challenge plaintiffs' constitutional claims contending that there is no private right of action under the Fifth Amendment because plaintiff Kwoun had an alternate remedy via the administrative review process and that plaintiff has not alleged the deprivation of a constitutionally protected property interest without due process.
The Supreme Court has held that victims of a constitutional violation by a federal officer have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right. Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 19 L.Ed.2d 619 (1971). Additionally, plaintiffs are not limited to statutorily created causes of action to the exclusion of a Bivens action if the alternative remedy is not equally effective and intended to operate as a substitute for the action under Bivens. Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).
The "Medicare Act" provides only for reimbursement in connection with care services provided without compensation. It does not provide compensation for plaintiffs' alleged loss of reputation, emotional distress, lost business, punitive damages, nor an opportunity to be heard before a jury. All of the aforementioned differences between the Medicare Act remedy *530 and a Bivens action are significant and counsel in favor of allowing plaintiffs' claim in Count IV against defendants Kram, Nicholson, and Howard. Carlson v. Green, supra.
Further, plaintiffs have alleged the deprivation of constitutionally protected rights without the benefit of due process.
"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law  rules or understandings that secure certain benefits and that support claims of entitlement of those benefits."
Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Here plaintiff asserts a property interest in his continued participation in the Medicare Program and to receive reimbursement for his services. Physicians such as plaintiff Kwoun are entitled to participation in the Medicare Program provided they comply with certain conditions and requirements under 42 U.S.C. §§ 1320 and 1395. This Court finds that these conditions and requirements are sufficient to secure benefits and to support claims of entitlement to those benefits under the rule in Board of Regents v. Roth, supra.
Plaintiff also alleges deprevation of his interest in his profession and a right to earn a living. These interest have long been recognized as property interests which are protected by due process. Schware v. Board of Bar. Examiners, 353 U.S. 232, 238, 77 S.Ct. 752, 755, 1 L.Ed.2d 796 (1957).
Plaintiff also has alleged that he was denied fair access to the procedures normally provided to physicians under the Medicare Act. The Eighth Circuit has previously determined that if a plaintiff can prove defendant interfered with his right to procedural due process, he is entitled to damages that actually resulted, which would include, for example, mental and emotional distress. Bishop v. Tice, 622 F.2d 349, 357 (8th Cir.1980). Accordingly, this Court finds that plaintiff Kwoun's amended complaint alleges deprivation of the types of property and liberty interests which are necessary to state a claim under the Fifth Amendement.

K.
Defendants seek to dismiss plaintiffs' claim of malicious prosecution contending that neither defendant SEMO PSRO or defendant DEMO doctors commenced a prosecution against defendant Kwoun.
The elements of a cause for malicious prosecution are: (1) commencement of prosecution of the proceedings against the present plaintiff; (2) its legal causation by the present defendant; (3) its termination in favor of the present plaintiff; (4) absence of probable cause for such proceedings; (5) the presence of malice therein; (6) damage to plaintiff by reason thereof.
Palermo v. Cottom, 525 S.W.2d 758, 763 (Mo.App.1975). Of these six factors defendants complain of only the first.
A person's acts may be the legal cause of prosecution if instituted at his insistence and request. It is sufficient if his action takes the form of an affidavit on which the case is based, regardless of further participation in the prosecution.... To impose liability there must be affirmative action by way of advice, encouragement, pressure or something similar in the institution, *531 or causing the institution of the prosecution.
Id.
In this case plaintiff has alleged that defendants prepared fraudulent reports and recommended that plaintiff be permanently excluded from participation in Medicare and related programs. Plaintiff further alleges that defendants' recommendations and reports precipitated the institution of the action complained of. Such allegations are sufficient to survive a motion to dismiss for failure to state a cause of action for which relief can be granted.

L.
Defendants also seek to dismiss plaintiffs' claim for outrageous conduct contending that the conduct alleged in the complaint is not extreme and outrageous as a matter of law.
The Missouri Supreme Court "has accepted the Restatement's view that a right of action does exist for damages for severe emotional distress, intentionally and recklessly caused, by `extreme and outrageous conduct'." Pretsky v. Southwestern Bell Telephone Co., 396 S.W.2d 566 (Mo.Sup. 1965); Nelson v. Grice, 411 S.W.2d 117 (Mo.Sup.1967.)
Both of the cited cases quote at length from the Restatement's comment on the type of conduct which will give rise to such liability. Essentially the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement, § 46 p. 73. Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo.Supp.1969).
In passing upon the sufficiency of plaintiffs' complaint, the Court must consider the truth of the facts alleged, giving them liberal construction and give plaintiff the benefit of all fair implications from such facts. Matthews v. Pratt, 367 S.W.2d 632, 634 (Mo.Supp.1963).
In the present case plaintiffs allege that defendants willfully issued a sanction report calling for permanent exclusion which contained manufactured and fabricated matters and refused to provide plaintiff Kwoun notice of charges or any opportunity to explain his situation. Plaintiff further alleges that defendants thereafter pursued the matter through the state-wide council and HCFA, with notice to the public, deliberately misstating facts, and contriving exhibits in their efforts to further prosecute him. Plaintiff alleges not one act but a continuous course of conduct. If the facts plaintiff alleges are true, reasonable men might well consider defendants' actions of such an extreme and outrageous nature as will render them liable for extreme emotional distress intentionally caused thereby.

M.
Defendants seek next to dismiss plaintiffs' claim for prima facie tort. The doctrine of prima facie tort, which first appeared in the Restatement, has been adopted by the courts of Missouri, Porter v. Crawford, 611 S.W.2d 265 (Mo.App. 1980). However, as is clearly set out in the Restatement, the doctrine is applicable only when the factual basis of the complaint does not fall within the parameters of an established tort.
Thus, application of the doctrine is not justified here as plaintiff has factually alleged malicious prosecution and outrageous conduct which are torts presently recognized by Missouri courts.
Plaintiffs have cited the case of Lohse v. St. Louis Children's Hospital, 646 S.W.2d 130 (Mo.App.1983) to support the position that an alternative tort claim does not defeat the prima facie tort claim. The court in Lohse, however, dismissed plaintiff's claim because plaintiff failed to plead any facts to support the claim. The court made no comment as to the appropriateness of a prima facie tort claim pled as a second cause with wrongful discharge. Id. at 130-31.
Accordingly, because plaintiffs have alleged the same set of facts as malicious *532 prosecution and prima facie tort, this Court will dismiss the prima facie tort claim.

N.
Finally, defendants seek summary judgment on all counts.
Summary judgment is an extreme remedy, one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discerible circumstances.
* * * * * *
... the Supreme Court set the standard that should be applied when one party to a lawsuit in federal court makes a motion for a summary judgment:
Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case `show that [except as to the amount of damages] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Fed.Rules Civ.Proc. This rule authorizes summary judgment `only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, ... [and where] no genuine issue remains for trial ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.'
Ozark Milling Co. v. Allied Mills, Inc., 480 F.2d 1014, 1015 (8th Cir.1973); Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944).
In the present case plaintiffs have alleged violations of the civil rights statutes, malicious prosecution, conspiracy, and outrageous conduct. Each of these charges are in themselves questions of fact in that their ultimate determination revolves on findings of motivation, intent, good-faith, and subjective feelings. The Eighth Circuit has determined that summary judgment is notoriously inappropriate for a determination of claims on which the issue of intent, good-faith, or other subjective feelings played dominate roles. McGee v. Hester, 724 F.2d 89, 91 (8th Cir. 1984). In this instance this Court finds summary judgment inappropriate due to the inherently factual nature of plaintiffs' claims and the belief that reasonable minds could differ as to defendants' culpability for their alleged actions.
Accordingly, defendants' motions will be granted in part and denied in part.