**Soung O. KWOUN, et al., Plaintiffs,**

v.

**SOUTHEAST MISSOURI PROFESSIONAL STANDARDS REVIEW ORGANIZATION, et al., Defendants.**

**No. S 84–259C(D).**

United States District Court,
E.D. Missouri,
Southeastern Division.

March 27, 1986.

Christopher J. Holthaus, Stephen H. Gilmore, St. Louis, Mo., Irwin M. Roitman, Clayton, Mo., for plaintiffs.

George L. Fitzsimmons, Fitzsimmons & McMichael, P.C., Clayton, Mo., for A.N. Sandler.

John C. Rasp, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for defendants.

Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for Federal defendants; Bruce Granger, Deputy Regional Atty., Kansas City, Mo., of counsel.

Richard R. Kordenbrock, Brinker, Doyen & Kovacs P.C., Clayton, Mo., for defendant Bregant.

---

William L. Webster, Atty. Gen. by Jerry L. Short, Asst. Atty. Gen., Jefferson City, Mo., for defendant Clark.

Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for defendant Rosenfeld.

John C. Rasp, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for John K. Legan, M.D.

## MEMORANDUM

WANGELIN, District Judge.

This matter is before the Court sua sponte.

## FACTUAL BACKGROUND

Plaintiffs brought this action as a result of an initial determination by the Health Care Financing Administration (HCFA), which excluded plaintiffs from the Medicare reimbursement program. This decision was made pursuant to the recommendations and efforts of the defendants. Plaintiffs subsequently filed an action before an Administrative Law Judge pursuant to the appeals provisions of 42 U.S.C. § 1320c. The ALJ reversed the HCFA decision and reinstated plaintiffs to the reimbursement program. *Kwoun v. Southeast Mo. Pro. Standards Review Org.*, 622 F.Supp. 520, 523 (E.D.Mo.1985). Plaintiff then filed the instant action alleging various civil rights and tort violations. However, all of plaintiffs' allegations may be categorized as an action for malicious prosecution which resulted in various alleged constitutional deprivations.[1]

The Court on its own motion now considers the question of whether defendants are entitled to any immunity from actions, such as the above-styled matter, due to their congressional mandate to conduct intensive reviews of government funded health services. For the reasons set forth below, the Court finds that defendants are entitled to immunity and, thus, this action must be dismissed.

*History and Evolution of PSROs*

The health care delivery system in the United States is the first industry to be comprehensively regulated since the 1930s. Health expenditures continue to escalate out of proportion to the rest of the economy. As long ago as 1976, 42.2% of the nations health expenditures came from public funds. Gibson & Mueller, *National Health Expenditures*, Fiscal Year 1976, Soc. Sec. Bull. 3, 4. Publicity generated by instances of fraud and other abuse in government funded health programs focused attention on both the dubious quality and the unnecessary quantity of the health care delivered in this country. Miller, *PSRO Data and Information: Disclosure to State Health Regulatory Agencies*, 57 Boston U.L.Rev. 245, 246 (1977).

When it established Medicare and Medicaid in 1965, Congress recognized the need to curb practioner and provider induced demand in order to contain the cost of government funded medical services. *Id.* To this end payments under these programs are limited to medically necessary health care services. 42 U.S.C. § 1395f(a)(7); § 1396. Congress required each hospital to organize a committee of physicians to evaluate the necessity of health care provided therein. *See* 42 U.S.C. § 1395x(e)(6); 45 C.F.R. §§ 250.18, .19 (1975). Those internal review activities, however, were nothing more than token lip service and could be aptly characterized as more form than substance. S.Rep. No. 1230, 92nd Cong., 2nd Sess. 255 (1972), U.S.Cong. & Admin.News 1972, p. 4989. Congress needed to put teeth into the requirement that federally financed health care be medically necessary. In order to promote effective, efficient, and economical delivery of Medicare and Medicaid, Congress enacted the PSRO Amendment to the Social Security Act. Act of Oct. 30, 1972, Pub.L. No. 92–603, tit. II, 249F(b), 86 Stat. 1429 (modified at 42 U.S.C. § 1320c, et seq. (Sup. II, 1972), as amended, (Supp. V,

---

1. For a complete recital of plaintiffs' allegations see *Kwoun v. Southeast Mo. Pro. Standards Review Org., supra* at 523.

1975). Thus, the PSRO Amendment was adopted in response to recognition that the original review system incorporated into the Medicare Program failed to control the costs of government sponsored medical care.

This legislation established a system of external monitoring of institutionally based health care services which Congress intended would be free from the conflicts of interest inherent in the old in-house review methods. PSROs are to determine (1) whether particular institutionally based services are medically necessary, (2) whether they are of acceptable quality, and (3) whether appropriate care could effectively be provided on an outpatient basis or more economically in an inpatient facility of a different type. 42 U.S.C. § 1320c–4(a)(1). The PSRO is also provided with various inforcement sanctions. Among these sanctions is the recommendation that the practitioner or provider be prohibited from participation in the reimbursement programs. 42 U.S.C. § 1320c–9(b)(1) (Supp. II, 1972).

Sanctions are appropriate whenever a practitioner or provider has "grossly and flagrantly" violated the statute or has failed to comply with his statutory obligations in a substantial number of cases. *Id.* In the instant case, defendants found that plaintiffs had violated the statute to such an extent as to warrant imposition of sanctions. The HCFA agreed and plaintiffs were excluded from participation in the Medicare and Medicaid reimbursement programs.

### Immunity of PSROs

Congress did not specifically provide PSROs with immunity from legal actions such as that in the instant matter. However, a careful review of the legislative history of the PSRO Amendment clearly indicates that some form of immunity is both necessary and desirable.

In formulating the present PSRO Amendment, Congress was convinced that the old utilization review system was simply not adequate; in fact, the old system was characteristically ineffective. It was fragmented, retrospective, and incomplete. Numerous witnesses who testified before the Senate Subcommittee stated that a significant proportion of the health services provided under Medicare and Medicaid were in excess of those which would be found medically necessary, and the old system failed to prevent this from happening. 117 Cong.Rec. 21266 (6/11/71).

The key to making a PSRO work effectively is the degree of motivation and sincerity of the physicians and medical organization in each area. 117 Cong. Record 21267 (6/22/71). The stakes are too high and public concern and scrutiny too great for anyone to delude himself that a pro forma PSRO will be acceptable. *Id.* Substance and not form must be the test of a PSRO. Performance and professionalism will be the criteria of judgment.

From the foregoing, it is abundantly clear that Congress expected that PSROs would conduct active, comprehensive, and probing reviews even if such reviews are not popular with the providers under investigation. Without such an intent, Congress would have left the weak and ineffective rubber stamping method in place.

In the instant case, defendants conducted a review just as Congress anticipated all PSROs should. At the completion of this review, defendants recommended that plaintiffs be excluded from the various government reimbursement programs. HCFA agreed with defendants' recommendation and issued an order to that effect.

Plaintiffs took advantage of the appeals process as provided by the statute. 42 U.S.C. § 1320c. In this instance, the appeals process worked in plaintiffs' favor and the HCFA ruling was reversed. Thus, to this point in the proceedings, the review process functioned just as Congress anticipated it should.

However, plaintiffs then brought the instant action. This action has thrown Congress's well-intentioned and carefully constructed plan into chaos. How can a PSRO be expected to conduct extensive reviews if by doing so it becomes the target of a

lawsuit such as the above-styled matter? Quite obviously it cannot. The instigation of lawsuits such as this will have a chilling effect upon the vigor with which these reviews will be undertaken. This was simply not Congress' intent.

Immunity has consistently been provided for groups and individuals who, by legal mandate, are charged with undertaking unpopular tasks.

The most recent example is articulated in *Malley, et al. v. Briggs, et al.,* — U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In *Malley* the Supreme Court ruled that police officers who believe that the facts stated in an affidavit are true and submits them to a neutral magistrate may be entitled to immunity under the objective reasonableness standard of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Under this ruling officers cannot avoid liability under the rule of qualified immunity on the grounds that the act of applying for an arrest warrant is per se objectively reasonable where the officer believes that the facts alleged in his affidavit are true, and that he is entitled to rely on the judicial officer's judgment in issuing the warrant and hence finding that probable cause exists. The question is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the application for the warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest.

In the instant case, the same type of immunity should be afforded. Defendants, like the officer in *Malley,* investigated a situation and presented their findings to a neutral party for a determination on their recommendation. As in *Malley* where the magistrate issued the requested warrants, the Director of HCFA acted favorably on defendants' recommendation. Subsequently, plaintiffs obtained a reversal through the appeals process just as in *Malley,* the grand jury refused to indict, and charges were dropped. The question then becomes whether defendants herein knew or should have known that their recommendation was improper. If this question is answered in the negative then defendants are immune from liability under the immunity theory articulated in *Malley.* In *Malley* the Court determined that only where the warrant application is so lacking *in indicia* of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost. *Malley, et al. v. Briggs, supra,* — U.S. at ——, 106 S.Ct. at 1098.

Here, if defendants' recommendations were so lacking in factual basis that defendants could not have believed them to be proper, plaintiffs' action should stand. However, after careful consideration of all pleadings and supporting documents, the Court finds that defendants conducted their review just as Congress intended. Further, defendants' recommendations were made with objective belief that plaintiffs should be excluded from the reimbursement programs based upon the facts uncovered in defendants' investigation. Thus, defendants should be shielded from liability pursuant to the Supreme Court's ruling in *Malley.*

As the foregoing clearly indicates, Congress has determined that comprehensive review of government funded health care is in the public interest. Yet Congress did not specifically provide immunity to encourage PSROs to vigorously pursue their appointed task. The Court will correct Congress' oversight with its ruling today. Plaintiffs and those similarly situated must not be allowed to use the Court system to gain revenge for actions which Congress ordered PSROs to undertake. Accordingly, this Court will enter an Order dismissing plaintiffs' complaint based upon defendants' inherently necessary immunity.