Stelios PARTHENOPOULOS,
Respondent-Appellant,

v.

Marvin MADDOX, Appellant-Respondent,

Marvin Maddox, Inc.,
Appellant-Respondent,

and

Midas International Corporation,
Respondent.

No. WD 31850.

Missouri Court of Appeals,
Western District.

Dec. 8, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 12, 1982.

Application to Transfer Denied Feb. 16, 1982.

James S. Formby, Kansas City, for respondent-appellant.

Roger J. Barbieri, Leo C. Gotschall, Kansas City, for appellants-respondents.

Edward J. O'Reilly, Popham, Conway, Sweeny, Fremont & Bundschu, P. C., Kansas City, for respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

These are cross appeals on behalf of plaintiff Stelios Parthenopoulos and defendants Marvin Maddox and Marvin Maddox, Inc. (Maddox, Inc.). Mr. Parthenopoulos appeals three orders of the trial court: (1) the order sustaining the motion of Midas International Corporation (Midas) to set aside a jury verdict against it in the amount of $768,888, (2) the order entered at the close of plaintiff's evidence sustaining a directed verdict on Count I in favor of all the defendants, and (3) the order overruling plaintiff's motion to amend the ad damnum clause in Count IV of plaintiff's petition. Mr. Maddox and Maddox, Inc., appeal the order of the trial court overruling their motion for a directed verdict at the end of all the evidence, the giving of five of the instructions, and the admission of evidence of the plaintiff's family status and background. Midas' appeal of the trial court's order overruling its alternative motion for new trial was dismissed by this court on its own motion in an order allowing Midas to

argue alleged points of error therein in its respondent's brief. We affirm in part and reverse in part.

### 1. *The Facts*

On March 14, 1970, Mr. Parthenopoulos, the plaintiff, took his 1966 Ford to the Midas Muffler Shop at 5618 Independence Avenue in Kansas City, Missouri, to have his brakes repaired. Mr. Parthenopoulos, who had emigrated from Greece to the United States fourteen years earlier, chose the Midas shop because of Midas' advertising on national television and in the yellow pages of the Kansas City telephone directory. For $51.45 the Midas shop relined the brakes on all four wheels, put new wheel cylinder kits in all four wheels, bled and refilled the hydraulic system, installed two grease seals and gave Mr. Parthenopoulos the following written guarantee:

> Midas custom brake linings are guaranteed to the original purchaser against wearing out for 30,000 miles. Replaced, if necessary for only a service charge at any Midas Brake Department.

Marvin Maddox, the authorized Midas dealer at the Independence Avenue shop and the president and sole owner of Marvin Maddox, Inc., read and explained the guarantee to the plaintiff.

In June, 1972 during the time that the 30,000 mile guarantee was still in effect, the plaintiff noticed a noise when he applied his brakes. He took the car back to the Midas shop on June 10, 1972. After his employees checked the brakes with the car on the rack, Mr. Maddox informed his customer that the brake drums were damaged. Mr. Parthenopoulos testified that Mr. Maddox told him that the cost to repair the brakes would be $145. (Mr. Maddox testified that the estimate was $75.) An argument ensued, the plaintiff maintaining that the entire cost of the needed repairs was covered by the guarantee and Mr. Maddox insisting that the customer would have to pay for the brake drums as well. As the argument became more heated, Mr. Parthenopoulos began yelling and waving his hands. Mr. Maddox testified, and the plaintiff denied, that Mr. Parthenopoulos doubled his hand into a fist and threatened to hit him.

Mr. Maddox called the police. The plaintiff waited quietly during the ten-minute interval before their arrival. Thomas E. Myer, one of the officers who responded to the call, was met by Mr. Maddox, identifying himself as the owner of the shop and wearing a "Midas" shirt which indicated that he was the manager. He told the officer that he wanted Mr. Parthenopoulos to leave the area. The officer testified that when he asked the plaintiff "what the problem was", Mr. Parthenopoulos replied by "hollering . . . at the top of his lungs." Despite the fact that the officer suggested three times alternate ways to solve the guarantee problem, Mr. Parthenopoulos continued his tirade. The officer placed him under arrest and put him in the police van. He then asked Mr. Maddox to sign a complaint and summons against the customer charging that Mr. Parthenopoulos did "disturb the peace of Marvin Maddox by arguing and threatening the health and welfare of Marvin Maddox."

After Mr. Parthenopoulos posted a $25 bond at the police station, he returned to the Midas shop, retrieved his car and took it to a nearby Montgomery Ward service shop where the brakes were repaired for $96.

Before the trial for disturbing the peace commenced on June 13, 1972, the complaint was dismissed at the request of Mr. Maddox. At trial Mr. Parthenopoulos gave the following confusing account of the 1972 proceedings in the municipal court:

Q. And when you got to court that morning, what happened?

A. Well, just the judge called our names, and I went over there and Mr. Maddox say, "Not guilty." And I don't explain anything to Mr. Judge. But, like he told me, "Okay, that's going to take you out $25.00 bail," you know, "and go home, just —"

Q. Mr. Maddox said you were not guilty?

A. No, he say, "Not guilty", the gentleman, he say, "Not guilty."

Q. This man here (indicating) said that?

A. Yes.

Q. And did the judge dismiss the case then?

A. Yes. And he told me to go to take the $25.00 where I pay, you know, for the bond.

The judgment of the trial in municipal court simply indicates that the complaint was dismissed at the request of the complainant.

On June 8, 1974, the plaintiff filed suit against Midas, Marvin Maddox and Maddox, Inc. That petition was amended on February 11, 1980, the first day of trial. In four counts it charged the three defendants with fraudulent misrepresentation, breach of express warranty, false arrest, and malicious prosecution. In each of Counts I and II the plaintiff prayed for $250 in actual damages and $200,000 in punitive damages; in each of Counts III and IV he prayed for $250 in actual damages and $250,000 in punitive damages.

At the close of plaintiff's evidence, the court sustained the motions of all the defendants for a directed verdict as to Count I, fraudulent misrepresentation. At the close of all the evidence, the court sustained the motions of all the defendants as to Count III, false arrest. Counts II and IV, for breach of express warranty and malicious prosecution, respectively, were submitted to the jury. Midas presented no evidence at the trial.

On Count II the jury found against Marvin Maddox, Inc., for breach of express warranty and awarded $150 in damages to plaintiff. On Count IV the jury awarded $4,250 in actual damages to plaintiff against Marvin Maddox, Marvin Maddox, Inc., and Midas for malicious prosecution. In addition the jury awarded punitive damages for malicious prosecution against Marvin Maddox in the sum of $1,250, against Maddox, Inc. in the sum of $3,750, and against the surprised Midas in the curious sum of $768,888.

Thereafter, the plaintiff moved to amend the ad damnum clause in Count IV to con-form to the evidence and the verdict of the jury as to actual and punitive damages. He also moved the court to set aside its order directing a verdict in favor of all the defendants on Count I and to grant a new trial on that count (which alleged false and fraudulent misrepresentation). The court denied both motions.

After trial Marvin Maddox and Maddox, Inc., moved the court, notwithstanding the verdict of the jury, to set aside the verdict and judgment or, in the alternative, to order a remittitur of $4,000 by plaintiff as to actual damages on Count IV.

Midas, suddenly stimulated, moved to set aside the verdict and to enter judgment in its favor or, in the alternative, to grant a new trial. Midas alleged prejudicial error in giving certain instructions, excessiveness of the verdict and forty other errors. Subsequently, Marvin Maddox and Maddox, Inc., not to be totally outdone, filed an amended motion for new trial, citing prejudicial error in the giving of certain instructions and fourteen other errors. The court overruled all of the motions.

In his order of May 12, 1980, and his amended judgment entry of May 13, the trial judge set aside the jury's verdict as applied to Midas. In a second amendment on May 13, the trial judge conditionally sustained Midas' motion for a new trial. On the same date, however, the second amended judgment entry was set aside and the court overruled Midas' motion for a new trial.

Because of the multiplicity of appeals and points, we shall separately address the issues arising under each count of the petition.

## 2. Count I, the Fraud Count

Count I alleged that "the representations, warranties and guarantees" of all the defendants "were false and fraudulent ... and were made with a malicious and willful intent to defraud the plaintiff ... [and] that plaintiff relied on the aforesaid false and fraudulent representations" to his damage. Plaintiff based his claim on the written "guarantee" and Mr. Maddox's oral as-

surances that Midas would replace the brake linings if they wore out within the 30,000 mile period.

At the close of plaintiff's evidence when it became apparent that the plaintiff would seek punitive damages, the court interrupted counsel for Midas:

THE COURT: Well, just a minute. Before you object ... I am going to say that, at this point in time, there is no evidence, in my opinion, as to any fraudulent misrepresentation made by Midas International . . . .

MR. FORMBY: Well, Your Honor, I think we have certainly made a submissible case for the jury.

THE COURT: Where?

MR. FORMBY: The certificate of guarantee is unqualified. The admission is made that Mr. Maddox, whom they clothed with apparent authority to act on their behalf, made the oral statement that it was guaranteed for 30,000 miles. He admitted that he didn't know that that was true when he made the statement.

THE COURT: There's no evidence in the record that when they made that statement that they didn't intend to comply with the warranty.

MR. FORMBY: But, Your Honor, there is an exception to the rule as to the admission of the present facts, a question of law when you are making a representation as to the performance of a product, and I'd be very happy to point out the case law on it.

THE COURT: Well, you may point it out at the next break, but as of now—
. . . .

Later in proceedings in chambers the court sustained defendants' motions for directed verdicts on Count I.

Recognizing that the granting of a directed verdict is a harsh remedy, we have reviewed the plaintiff's evidence in the light most favorable to him to determine its sufficiency to make a submissible case for the jury. That evidence has been taken as true unless entirely unreasonable. *Reid Vann Foreign Car Service, Ltd. v. Central District Alarm, Inc.*, 604 S.W.2d 783, 784 (Mo.App. 1980).

On appeal, Mr. Parthenopoulos contends that the Certificate of Guarantee is, in fact, two guarantees or representations: first, it guarantees the brake linings against wearing out for 30,000 miles; and second, it guarantees that if they have to be replaced for any reason within 30,000 miles, Mr. Parthenopoulos would only have to pay a service charge. He argues that under the first guarantee evidence of Mr. Maddox's intention not to perform at the time the guarantee was made need not be presented. Therefore, according to plaintiff, he made a submissible case of fraudulent misrepresentation to the jury.

We find no merit in plaintiff's insistence that the certificate contained two guarantees. The guarantee that the brake linings would not wear out for 30,000 miles would be an empty promise without the promise to indemnify, that is, to replace the linings. The guarantee in question is one promise in the form of an express warranty as defined by the court in *Mitchell v. Rudasill*, 332 S.W.2d 91 (Mo.App.1960), at 94–95:

A warranty is a statement or representation made by the seller of goods, contemporaneously with, and as a part of, the contract of sale, although collateral to the express object of it, having reference to the character, quality, or title of the goods, *and* by which he promises or undertakes to insure that certain facts are or shall be as he then represents them. A warranty is express when the seller makes an affirmation with respect to the article to be sold, pending the treaty of sale, on which it is intended that the buyer shall rely in making the purchase . . . . (Emphasis added.)

■ Neither do we find support for the proposition that proof of Mr. Maddox's intent not to perform is unnecessary in this case. In *Brennaman v. Andes & Roberts Brothers Construction Co.*, 506 S.W.2d 462, 465 (Mo.App.1974), this court noted the possibility of two distinct causes of action: one based on misrepresentation of *intention to*

*perform* and the other which would include "matters of *performance, capability and capacity of products* and commodities which subsequently fail in use or are found deficient with the passage of time." One who possesses superior knowledge or experience and misrepresents performance, capability or capacity of a product where later use of the article shows such representations to have been false, is liable in an action in fraud, other requisite factors in traditional fraud cases being also present. *Id.*

"The giving of . . . a promise, even though breached the next day, is not such a fraudulent misstatement of fact as will support an action for tortious fraud. The misrepresentation *must be of existing fact.*" *McGuire v. Bode*, 607 S.W.2d 165, 167 (Mo. App.1980); *Klecker v. Sutton*, 523 S.W.2d 558, 562 (Mo.App.1975). The plaintiff here presented no evidence from which a jury could conclude that Mr. Maddox did not intend to honor the guarantee at the time of the giving of it. Evidence that, at the time of the sale, Mr. Maddox was aware that different driving habits or driving terrain could affect the life of the brake linings does not prove that he intended not to honor his guarantee. Nor does it prove that he was intentionally misrepresenting the performance, capability or capacity of the brake linings. Under either theory, therefore, the plaintiff had no cause of action.

### 3. *Count II, the Warranty Count*

Count II of the petition sought actual and punitive damages from all the defendants for breach of express warranty. The jury awarded plaintiff $150 actual damages against Maddox, Inc., an award not set aside by the trial judge. On appeal, Maddox, Inc., contends that the court erred in giving Instructions No. 5 and 9.

Instruction No. 5 was:

If you find the issues in favor of the plaintiff on Count II of the petition, then you must award plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the occurrence mentioned in evidence.

Instruction No. 9 was the same except for the number of the count. This defendant asserts that the court prejudicially erred in failing to specify each occurrence upon the basis of which the jury could award damages, and in failing to follow the Notes on Use, MAI 2d Edition. Further, this defendant contends that the instructions conflicted with each other and constituted a roving commission to the jury in the assessment of a verdict.

Specifically, Maddox, Inc., refers to the Notes on Use (1978 Revision) to MAI 4.01 which advise that:

The term "occurrence" must be modified by substituting some descriptive phrase which specifically describes the compensable event in any case where the evidence discloses more than one event which is claimed to have caused plaintiff's injury or damages. For example, if the plaintiff claims he sustained damages as a direct result of negligent medical care while being treated for a non-compensable fall or illness, the instruction should be modified to read, ". . . as a direct result of the conduct of defendant as submitted in Instruction Number _____ (here insert number of verdict directing instruction) for which you find defendant liable."

Maddox, Inc., argues that the two instructions are defective because neither contains any reference to the exact occurrence or event, breach of warranty or malicious prosecution, which is the basis for awarding damages. We note, however, the following exchange in chambers after the jury had retired:

THE COURT: I received the following note: "We need a copy of the specific counts that we are considering."

Of course, we can't send them a copy of the pleadings, but I see nothing wrong with saying that they are considering the count for breach of warranty and the count for malicious prosecution. Any objection?

MR. FORMBY: No, I don't have any.

MR. BARBIERI: No.

MR. O'REILLY: [Counsel shakes head.]

THE COURT: Okay. There's no objection on the part of Defendant Marvin Maddox and Defendant Marvin Maddox, Inc. There's no objection on the part of the Defendant Midas International, Inc., is that correct, gentlemen?

MR. O'REILLY: Could we just—off the record, if I may.

[A discussion was had off the record.]

THE COURT: Very well. I am going to send the following message up by the bailiff, and that's to instruct them that they are still considering Count II, which is breach of warranty, and Count IV, which is malicious prosecution.

■ Assuming error occurred in the failure to specify the occurrences as defendant claims, the error was cured by the court's response to the jury's question. By acceding to the trial court's giving of that explanation to the jury in lieu of the giving of proper Instructions No. 5 and No. 9, the defendant may be deemed to have invited the error, *Fletcher v. Cummings*, 532 S.W.2d 890, 891 (Mo.App.1976), or to have waived any right thereafter to complain of it. Accordingly, we find that any error that occurred by the giving of Instructions No. 5 and No. 9 was not reversible error. The award of $150 to Mr. Parthenopoulos for breach of express warranty is affirmed.

### 4. *Count III, the False Arrest Count*

■ In count III of Mr. Parthenopoulos' petition, he prayed for actual and punitive damages against all the defendants for false arrest and imprisonment. At the close of defendants' evidence, the trial judge sustained the motions of all defendants for directed verdict on Count III. Although the plaintiff does not appeal this part of the judgment, Mr. Maddox and Maddox, Inc., maintain that the court erred in giving the two instructions withdrawing "the issues" of Counts I and III. They reason that the failure to follow MAI 34.02, the withdrawal instruction, by not stating the specific issues removed from the consideration of the jury, misdirected and confused the jury

leaving them undecided as to which issues remained for them to decide. The jury made no finding against the defendants on these issues, therefore the error, if any, was harmless. *Gardner v. McGee*, 505 S.W.2d 452, 453 (Mo.App.1974).

### 5. *Count IV, the Malicious Prosecution Count*

Mr. Parthenopoulos' allegation of malicious prosecution against all the defendants resulted in substantial verdicts, including the $768,888 against Midas. The plaintiff appeals the court's order setting aside the verdict as to Midas and entering judgment in favor of Midas. The court's order reads:

Defendant, Midas International in their suggestions in support of their motion and in their oral arguments basically take the position that since no agency was proved that the judgment cannot stand. Plaintiff, in his suggestions in opposition, generally takes the position that the doctrine of apparent authority applies and that defendant, Midas International Corporation's motion for directed verdict, or, in the alternative, for a new trial, should be overruled.

The Court finds that in a case of malicious prosecution, the principle involved is not that of principal and agent, but rather the principle of collateral estoppel and that, basically the principles of master and servant apply. See Malicious Prosecution, 52 Am.Jur.2d Sec. 61. The basic criteria under this principle would be whether or not there was, in fact, an appearance of authority and reliance thereon by the plaintiff.

There can be no question in this case in Count II Midas International would be responsible for a breach in the warranty with respect to the brakes involved. In this case, however, there is no evidence in the record whereby either express implied authority can be seen or inferred. At 53 Am.Jur.2d Sec. 430 will be found the following statement:

"... but it appears beyond argument that in respect to a servant's malicious or wanton acts, the master cannot be

held liable on the ground of merely apparent authority since the injured person does not suffer by reason of having placed reliance on the appearance of authority."

At Am.Jur.2d Sec. 425, the following statement will be found:

"The test of liability of a master for the tortious act of his servant now universally accepted, is whether there was express or implied authority for doing the act upon which the plaintiff bases his action. In customary legal phraseology, to make the master responsible for the acts of his servant, the act must be done in the scope or course of the service employment, that is, under the express or implied authority of a master."

See also A.L.R.2d at page 411. While the dictum in various Missouri cases may differ, this Court can find no case wherein the doctrine of apparent authority has been implied in an intentional tort where there was not some bases [sic] of either express or implied authority upon which the act was performed that caused the victim to suffer. In other words, it is the doctrine of collateral estoppel that applies and there must be the element of reliance before the plaintiff can recover. There is no evidence in the record which would lead to either an express or an implied authority for having people arrested. Accordingly, the Court hereby sustains the defendant, Midas International Corporation's motion for directed verdict.

On appeal, the plaintiff argues that Maddox had apparent authority to act as the managing employee of Midas and the arrest and malicious prosecution of plaintiff was within the scope of that apparent authority thereby making Midas liable. Midas contests the plaintiff's position as to apparent authority, but the other defendants assert that plaintiff failed to make a submissible case for malicious prosecution in the first place. If they are correct, whether or not Maddox had real or apparent authority to cause plaintiff's arrest and prosecution is irrelevant.

In *Stafford v. Muster*, 582 S.W.2d 670, 675 (Mo.1979) (en banc), the Supreme Court listed the elements of an action for malicious prosecution: (1) the prosecution of the proceedings against the plaintiff, (2) its legal causation or instigation by the present defendant, (3) its termination in favor of the present plaintiff, (4) the absence of probable cause for such proceeding, (5) the presence of malice, and (6) consequent damage. On appeal Mr. Maddox and Maddox, Inc., assert that plaintiff failed to present independent proof of absence of probable cause and the presence of malice in Mr. Maddox's actions.

■ The actions which underly the allegation of malicious prosecution were Mr. Maddox's calling the police when Mr. Parthenopoulos became angry and began shouting, his telling the officer on his arrival that he had called the police because he had been worried that Mr. Parthenopoulos might strike him, his signing the complaint when told by the officer that he would have to do so when Mr. Parthenopoulos refused to leave the premises peaceably, and his appearing in the municipal court to dismiss the complaint. Proof of those actions does not prove the absence of probable cause or the presence of malice. Considerations of sound public policy lead the courts not to look with favor upon actions for malicious prosecution and to insist upon strict and clear proof of the essential elements of the action. *Higgins v. Knickmeyer-Fleer Realty & Investment Co.*, 335 Mo. 1010, 1029, 74 S.W.2d 805, 814 (1934); *Palermo v. Cottom*, 525 S.W.2d 758, 763 (Mo.App.1975). A person who invokes the law and its processes to protect his peace and property must be assured in advance that if he does so in a lawful and orderly fashion he will not be penalized for it. In *Bonzo v. Kroger Grocery and Baking Co.*, 344 Mo. 127, 125 S.W.2d 75 (1939), the court held (at 135 and 79 respectively) that public policy dictates that

the public's interest in peace and good order exact of an individual citizen for the benefit of the public at large certain requirements that citizens be not de-

terred by a fear of unpredictable consequences from a bona fide resort to the duly constituted authorities and tribunals for the vindication of the interests of society in matters of public justice.

The court in *Palermo, supra*, at 764, defined probable cause for initiating proceedings as

> reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious man in his belief that the person accused is guilty of the offense charged. Probable cause is reasonable cause, not necessarily actual cause. We must consider the facts as the prosecuting party could have reasonably believed them to be under the circumstances at the time. Since want of probable cause involves a negative, only slight proof is necessary to make a prima facie case. (Citations omitted.)

The evidence of Mr. Maddox, his employees, and the police officer who responded to the call was that Mr. Parthenopoulos was screaming and waving his hands in such a manner as to disturb the business routine and peace of Mr. Maddox. The plaintiff's own testimony is evidence of that behavior:

> Q. And did you raise your voice to him when you told him that, when you told him that you put your wife and your kids in the car?
>
> A. Yeah, that's—
>
> Q. Then what happened?
>
> A. Oh, he say, after I raise my hands and my voice, he say, "I am going to call the police." I told him, "That's all right. I am going to stay here to find my rights," you know, "for what problems we got here." And I don't left the office, I wait for the police.

Under all the evidence Mr. Maddox could reasonably have believed that the plaintiff was committing an offense when he summoned the assistance of the law.

■ The element of malice in malicious prosecution is defined as the intentional doing of a wrongful act without legal justification. It may be inferred from the absence of probable cause and does not neces-

sarily involve hatred or ill will. *Palermo, supra*, at 765. Society has developed a process by which both the businessman and the irate customer are protected. When Mr. Parthenopoulos became overwrought, Mr. Maddox had no alternative but to call the police. Thereafter, Mr. Maddox had no alternative but to follow the advice and directions of the police officer who testified that:

> I went to Mr. Maddox and asked Mr. Maddox what the problem was at the shop. And Mr. Maddox stated that a customer, who had become irate over some type of service warranty or guarantee on his brakes, was causing a disturbance in his shop. And, in fact, he said he was worried that this individual may strike him, and that's why he called the police. I asked him if the service was completed then or had it been done at a previous time. He said a previous time, and he was complaining about the warranty work. I asked him what action he wanted me to take. I stated that it was on private premises and I could not order the individual off unless he was causing a disturbance. And if he was, then the owner or a representative would have to sign a complaint for disturbing the peace. He said, "I really don't want to have the individual arrested, I would just like to have him leave the area." I said, "All right. I will go over and talk to him; but, if all else fails, I will probably have to arrest him, if he is causing a disturbance, to get him off the premises." I said, "Are you willing to sign a complaint?" He said, "Yes, if all else fails."

Any shop owner or manager faced with an equivalent situation would be subject to unpredictable harassment if a customer could "shout" his way into receiving services or goods to which he might not be entitled. We find, therefore, no evidence of a wrongful act done without legal justification.

■ To make a submissible case for the jury the plaintiff had to produce substantial evidence to support each and every element of his cause of action. "No fact essential to submissibility can be inferred in the absence

**572**

of a substantial evidentiary basis." *Reid Vann Foreign Car Service, Ltd. v. Central District Alarm, Inc., supra*, at 784. This court's task is to view the evidence in the light most favorable to the plaintiff. *Tucker v. Central Hardware Co.*, 463 S.W.2d 537, 540 (Mo.1971). Even under a standard of review so favorable to Mr. Parthenopoulos, we find that there was insufficient evidence to permit the jury to consider Count IV for malicious prosecution. We must reverse the trial court's order overruling the defendants' motion for a directed verdict on Count IV at the end of all the evidence.

### 6. *Conclusion*

We have considered all of the remaining points raised by the parties, but in light of the foregoing and our disposition of the case, we find it unnecessary to deal with those issues.

Accordingly, the judgment is affirmed in part and reversed in part. The order of the trial court sustaining the motions of all the defendants for a directed verdict on Count I for fraudulent misrepresentation is affirmed. The jury verdict in the amount of $150 for actual damages against Maddox, Inc., on Count II for breach of express warranty is affirmed. The order setting aside the $768,888 verdict of the jury under Count IV against Midas is affirmed. The judgment in the amount of $4,250 against all the defendants for actual damages on Count IV for malicious prosecution is reversed, and the judgments against Mr. Maddox and Maddox, Inc., for punitive damages for malicious prosecution are reversed.

All concur.