ORLANDO T. CORYELL, Plaintiff-Appellant, v. LOMBARD LINCOLN-MERCURY MERKUR, INC., Defendant-Appellee.

Second District   No. 2—88—0522

Opinion filed September 28, 1989.

Orlando T. Coryell, of LaGrange, appellant *pro se.*

Kenneth Moy, of Kenneth Moy, Ltd., of Clarendon Hills, and Scott D. Bromann, of Speer & Associates, of Wheaton, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Orlando Coryell, appeals from a judgment of the circuit court of Du Page County, which entered a directed finding for defendant, Lombard Lincoln-Mercury Merkur, Inc., on both counts of the amended complaint.

Plaintiff filed a small claims complaint against defendant on August 17, 1987. He later filed an amended small claims complaint which consisted of two counts. In count I, plaintiff alleged the following. On July 30, 1983, plaintiff brought his Mercury automobile (Mercury) to defendant for repairs. At the time of the repairs, defendant, as part of the contract, promised a lifetime guarantee on the repair, *i.e.*, to wit, "We fix it right, or we fix it free." In reliance on this lifetime service guarantee, plaintiff permitted defendant to install a rebuilt carburetor in his Mercury. Subsequently, on a number of occasions, plaintiff brought the Mercury to defendant's shop for repairs which were necessitated by the rebuilt carburetor's failure to perform properly. At the time the amended small claims complaint was filed, the

Mercury still ran poorly, the result of defendant's failure to fix the car properly.

In count II, plaintiff alleged the following. On June 8, 1987, plaintiff brought the Mercury to defendant's repair center. Defendant made certain adjustments in the Mercury, which rendered the car unsafe for travel. Plaintiff refused to pay the $615.54 bill charged by defendant which, in turn, refused to deliver the vehicle to plaintiff until the outstanding bill was paid. As a result of the failure to deliver the Mercury, plaintiff failed to attend a final job interview, at which he was to discuss a job offer. Plaintiff subsequently was not hired for the position. Plaintiff alleged suffering stress, fear, and mental anguish, resulting from defendant's breach of warranty and sought a $500 judgment for said suffering.

Before we discuss the small claims hearing, we note that no court reporter was present, and, thus, no transcript exists. A report of proceedings was apparently reconstructed by the parties and certified by the trial court. The court below, in certifying said report of proceedings, stated that although plaintiff made no formal offer of exhibits A through J, the court considered said exhibits in reaching its decision. Our reading of the report of hearing shows that indeed plaintiff did formally offer said exhibits and that the trial court improperly failed to rule on the submitted exhibits. For purposes of this appeal, we will treat the tendered exhibits as part of the record on appeal.

At the small claims proceeding on May 1, 1988, plaintiff appeared *pro se*, and defendant was represented by two attorneys. After plaintiff had rested his case, the court below granted defendant's motion for a directed finding. Regarding count I (breach of warranty), the court found there were no elements of damage proved and that defendant did not breach its warranty of repair. Regarding count II (consequential damages), the court found that the claimed damages were too remote and were not a reasonably foreseeable consequence of defendant's alleged wrongdoing.

On appeal, plaintiff raises two issues in his *pro se* appellate brief, namely, (1) the trial court erred by ruling that no express or implied warranty existed and that defendant had not breached express and implied warranties; and (2) defendant did not legally impound plaintiff's automobile.

Initially, plaintiff argues that defendant created an express warranty, *i.e.*, a lifetime service guarantee "We fix it right, or we will fix it free," by making said statements on an advertising brochure and a sign prominently displayed in defendant's customer service area. Plaintiff asserts that the advertising brochure which was specifically

addressed to him and the warranty sign, which plaintiff estimated was 3 feet by 4 feet, induced him to use defendant's repair services.

At the small claims hearing, plaintiff testified:

"I received this advertising brochure in the mail which I submit to the court as Exhibits B and C. This brochure states 'We fix it right or we fix it free'. Please note that the Compare Repair Guararantees [sic] chart specifically includes carburetors.

On July 30, 1985 I contracted with Lombard Lincoln-Mercury to have my stationwagon's carburetor fixed. As I stood at the service writer's desk I saw a large sign hanging on the wall. It looked like it was about 3 feet by 4 feet in size. The sign said 'Lifetime Service Guarantee'.

I asked about what the sign meant. I was told it applied only to Ford parts.

I told the service writer the condition of the stationwagon: black smoke comes out the tail pipe but the engine only uses a quart of oil every 2000 miles, the gas mileage on the highway is now 18 miles to the gallon, the engine has a sound like a vacuum leak, the engine snaps and crackles, and fumes come into the car.

The service writer and I discussed whether a simple repair would fix the problems or whether overhauling the carburetor would be the solution. He emphaised [sic] that a fix would not be a permanent solution only overhauling the carburetor would fix it.

I told him to go ahead and rebuild the carburetor."

On the side of the brochure to which plaintiff's address is affixed, the following language is found:

"Attention: Lincoln, Mercury and Ford owners . . .

OUR LIFETIME SERVICE GUARANTEE—'WE FIX IT RIGHT, OR WE FIX IT FREE!!' "

On the portion of the page reserved for the return address is defendant's name and address.

On the other side of the brochure is the following language:

"The guarantee of a lifetime.

If you currently own a Ford, Mercury, Lincoln or Ford light truck, you can take advantage of the Lifetime Service Guarantee at participating Ford or Lincoln-Mercury dealers. It's good for as long as you own your car. New or used, no matter what year, no matter where you bought it, no matter how long you've owned it, no matter how many miles you drive.

Free parts. Free labor.

Once you pay for a covered repair, that's it. If that repair needs to be made again, we'll fix it free. *Free* parts. *Free* labor. It costs you absolutely nothing.

Even the fine print looks good.

The list of what's covered reads like an inventory of the Ford Motor Company Parts Department. In fact, it's easier to tell you what's not covered. Only tires, batteries, hoses and belts, brake and clutch linings, upholstery and sheet metal repairs are excluded. It's a limited warranty for cars in normal use.

Now look at the competition.

Study the chart and you'll see, for example, that the Lifetime Service Guarantee is the only one that covers engine work (*parts and labor on carburetors*, fuel pumps, radiators, etc.) for as long as you own your car. No department store, no discount store, no muffler company, no other automaker can say the same.

And it's a simple truth that no one else offers you the kind of security that comes with the Lifetime Service Guarantee. Perhaps because no other car company or service facility has the kind of confidence in the quality of their repair work that we have.

Quality is Job 1.

Qualify is Job 1 at Ford Motor Company. And we're just as committed to the quality of our service. That's why we offer the Lifetime Service Guarantee. So take advantage of the repair guarantee that's as good as the cars it covers. See us for quality service and the Lifetime Service Guarantee." (Emphasis added.)

A chart on this page compares the repair guarantees of car company dealers and car repair franchises, *e.g.*, Midas Muffler, and B.F. Goodrich. The chart indicates that on major engine work, including repair of *carburetors*, Ford and Lincoln dealers offered a lifetime guarantee on *parts and labor*.

Further, evidence shows that on or about July 30, 1985, plaintiff owned a 1981 Mercury Colony Park station wagon, which he brought to defendant for repairs. The car's odometer read 43,112 miles. (We observe here that each repair order form used by defendant contains the following language "PARTS AND SERVICE WORK PERFORMED ARE WARRANTED FOR 90 DAYS OR 4,000 MILES WHICHEVER OCCURS FIRST.") After a mechanical diagnosis, defendant rebuilt the carburetor and replaced the following items:

fuel filter, air filter, breather, plugs, transmission filter, transmission gasket, and transmission fluid. Plaintiff paid defendant for the repairs, which totaled $432.93.

On or about August 1, 1986, plaintiff brought his vehicle to defendant for repairs. The car's odometer read 50,260 miles. Defendant replaced the carburetor, which cost $680.06, plus labor. Defendant also set the engine timing and specification, cleaned the ECK system, serviced the smog valve, and, apparently, replaced the spark plugs. The total bill was $844.66.

On or about February 13, 1987, plaintiff again brought his vehicle to defendant for repairs. The car's odometer read 53,182 miles. Defendant reset the carburetor at no charge. Defendant also replaced the timing chain and gears, fuel pump, and oil filter, and oil. The total bill was $615.54.

On February 19, 1987, plaintiff wrote Mr. Larry Sherman, president of the defendant, stating that he disputed payment for the February 13, 1987, repair. Plaintiff further stated that he was withholding payment for said repairs "until I get a safe car and a resolution of what lifetime guarantee means."

On or about February 25, 1987, plaintiff again brought the vehicle to defendant for repairs. The car's odometer read 53,928. Defendant replaced the carburetor at no charge, pursuant to the 4,000-mile warranty of the August 1, 1986, repair order, even though more than 90 days had elapsed.

On April 11, 1987, plaintiff sent a letter to Mr. Mark Rupprecht, defendant's service director, stating that the car was not performing "any better now than when [defendant] first rebuilt the carburetor."

On or about May 13, 1987, plaintiff again brought the vehicle in for repairs stating that the car stalled and its gas mileage was poor. Defendant made repairs at no charge. Finally, on or about June 8, 1987, plaintiff again brought the vehicle in for repairs. Defendant adjusted the idle speed at no charge. The car's odometer read 57,041. On this date, defendant held plaintiff's car until he secured cash to pay for the disputed replacement of the timing chain and fuel pump on February 12, 1987. Because defendant withheld the return of his vehicle, plaintiff was three hours late for an interview with a prospective employer, who had allegedly offered a job to plaintiff. Said employer allegedly withdrew the job offer.

After plaintiff rested his case, defendant moved for a directed finding on both counts of the amended complaint. As to count I (breach of warranty), the court directed a finding on it, reasoning that no elements of damage were proved and that defendant did not

breach its warranty of repair. In so finding, the following dialogue took place:

"THE COURT: Was the mailing (advertising brochure) attached to the service order[?]

MR. CORYELL: No. How could I attach the sign? What is an inducement?

THE COURT: Unless the advertising is attached it is not binding."

Further, the court below directed a finding on count II (consequential damages) holding that damages arising from the loss of the alleged job offer were too remote and were not a reasonably foreseeable consequence of defendant's alleged wrongdoing.

■ We initially observe in nonjury cases, at the close of plaintiff's case in chief, defendant is permitted to move for a finding in his favor. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151.) In deciding the motion, the trial court is to weigh the evidence and, if the ruling is favorable to the defendant, enter a judgment dismissing the action. (81 Ill. 2d at 154.) The trial court must consider all the evidence, including any favorable to defendant. A reviewing court shall not reverse the trial court's decision unless it is against the manifest weight of the evidence.

■ The court, when ruling on a motion for a directed finding, must determine whether plaintiff made a *prima facie* case. (81 Ill. 2d at 154.) If a plaintiff fails to do so, defendant is entitled to a judgment as a matter of law. 81 Ill. 2d at 154-55.

■ To create an express warranty of goods sold, no particular words or forms of expression are necessary, but a positive assertion of a matter of fact by seller at the time of the sale for the purpose of assuring the buyer of said fact and thereby inducing him to make the purchase, constitutes an express warranty. (*Beckett v. F.W. Woolworth Co.* (1941), 376 Ill. 470.) Moreover, the buyer must show reliance on the seller's representations in order for an express warranty to exist. *Hrosik v. J. Keim Builders* (1976), 37 Ill. App. 3d 352.

Plaintiff's unrebutted testimony shows that he asked the employee at defendant's service desk about the sign behind the service counter which described the lifetime service guarantee on parts and labor of covered repairs. The service person stated that said guarantee applied only to Ford parts. Apprised that plaintiff was interested in obtaining the lifetime service guarantee, defendant's service person did not say that plaintiff needed to do anything more than have defendant's service department make the repair with Ford parts. Moreover, the brochure, which induced plaintiff to bring his car to

defendant's service department, gave no indication that a customer needed to do anything more than to take his Ford, Lincoln, Mercury, or light Ford truck for covered repairs at a participating Ford or Lincoln-Mercury dealer, *e.g.*, the defendant.

Further unrebutted testimony and evidence put forward by plaintiff shows that on August 1, 1986, defendant charged plaintiff for a second repair of the carburetor, which defendant had originally rebuilt on July 30, 1985. The cost of this carburetor repair was $680.06.

Defendant argues that the brochure is merely a solicitation, an invitation to potential customers to inquire further as to the availability and requirements for such lifetime warranty. Yet the brochure gives no requirements for said warranty other than paying for a covered repair on a Ford made car at a participating dealer. Nor did defendant's service representative inform plaintiff of anything further he must do to qualify for the lifetime service guarantee.

Based upon the record before us, we find that plaintiff established a *prima facie* case of express warranty and a subsequent breach of said warranty. Plaintiff accepted the brochure's invitation and took his Mercury to defendant, a participating Lincoln-Mercury dealer. He inquired as to the lifetime warranty and was told it applied only to Ford made parts. Plaintiff, in reliance on the express warranty, had defendant make repairs on his Mercury. Unless defendant can put forward proof that the repairs were not made with Ford parts, thereby negating an element of the express warranty, plaintiff on remand will prevail as to subsequent repairs made specifically regarding the Mercury's carburetor. The other repairs (*e.g.*, replacing the timing chain) likewise were covered by the lifetime service guarantee, but the record shows that none of those repairs had to be redone by defendant. Thus, plaintiff cannot recover for the other repairs made by defendant.

Regarding plaintiff's other issue, that defendant's impounding of the Mercury was unjustified, he cites no authority in support of his contention and, thus, waives this argument. *Associated Investment Corp. v. Laidlaw Waste Systems, Inc.* (1987), 152 Ill. App. 3d 279.

For reasons stated above, we find that the court below erred in granting defendant's motions for directed finding, and accordingly, we reverse the judgment of the circuit court and remand this cause of action for further proceedings consistent with this opinion.

Reversed and remanded.

UNVERZAGT, P.J., and DUNN, J., concur.