OPINION OF THE COURT
Thomas A. Dickerson, J.
On May 5,1993 the plaintiff drove her vehicle, a 1990 Honda Civic, to the defendant, a Midas Muffler shop located at 400 South Broadway, Tarrytown, New York (Midas), to have her brakes serviced. A Midas mechanic inspected the Honda and replaced the front brake pads, resurfaced the right and left front rotors, replaced the shims and relined the rear brakes.
Seeking to avoid the high cost of a future "brake job” the plaintiff decided to buy a Midas Warranty Certificate sold by defendant which provided:
"warranty period
"Your Midas brake shoes or disc brake pads are warranted by Midas to you, the original purchaser, for as long as you own the vehicle on which the brake shoes and/or disc brake pads were originally installed.
"what is covered
"If your Midas brake shoes and/or disc brake pads become damaged, defective or worn out * * * Midas will install replacement warranted brake shoes or disc brake pads. You will not be charged for the brake shoes or disc brake pads or the labor required to install them. The brake shoes and/or disc brake pads will be considered worn out when the lining’s minimum wearable thickness is less than manufacturer’s specifications * * *
"what is not covered
"This warranty does not cover the cost of additional components and labor required to restore the brake system to its proper operation. The Midas shop must restore the entire brake system to its proper operation. If you do not authorize this service, you will receive non-installed, non-warranted brake shoes and/or disc brake pads.”
On December 15, 1994 the plaintiff’s brakes were screeching once again. The plaintiff returned her vehicle to Midas for servicing. Plaintiff presented her Warranty Certificate and requested that defendant inspect the front wheels and replace worn brake pads, free of charge.
Midas’s mechanic removed the Honda’s front wheels, found that the right front inner brake pads were worn and invited plaintiff to inspect. Plaintiff observed the worn pads and *393 requested that defendant replace them. Midas’s mechanic, however, refused to replace the worn brake pads unless plaintiff allowed him to (1) inspect the entire brake system, front and rear, and (2) replace any and all parts which Midas determined to be needed to restore the entire brake system to its proper operation. Plaintiff would, of course, be required to pay all of the costs (labor and parts) generated during this restoration process.
The plaintiff refused to permit Midas to inspect the entire brake system and make repairs as it deemed necessary. Midas’s manager not only failed to replace plaintiff’s worn brake pads but also failed to give her "non-installed, non-warranted brake shoes and/or disc brake pads”. The plaintiff took possession of her vehicle and drove to a service station located in Irvington, New York, where she purchased new brake pads and had them installed for $128.10.
At trial Midas’s manager’s only explanation for why it was necessary to inspect the entire brake system and make repairs deemed necessary and proper by Midas was to protect Midas from exposure to consumer lawsuits arising from accidents traceable to that part of the brake system that had not been inspected.
DISCUSSION
The plaintiff seeks damages of $128.10, the amount she paid to another repair shop to remove and replace her worn right front brake pads. Plaintiff reasonably expected Midas to honor its Warranty Certificate and provide the new brake pads which she had already paid for but was forced to purchase a second time elsewhere.
Based upon a review of the facts the court finds that plaintiff has asserted the following cognizable causes of action against the defendant: (1) violation of UCC 2-316 (1) (exclusion or modification of warranties), (2) violation of UCC 2-719 (2) (contractual modification or limitation of remedy), (3) violation of General Business Law § 617 (2) (a) (motor vehicle parts warranty), (4) breach of warranty and (5) violation of General Business Law § 349 (unfair, deceptive and misleading business practices).

The Auto Repair Business

Generally, car and truck owners know precious little about how their vehicles operate. When a problem arises they must rely upon repair shops that on occasion may be operated by unscrupulous people. Common fraudulent and deceptive prac *394 tices include charging excessive prices, delays in completing repairs (see, e.g., Ford Motor Co. v Mayes, 575 SW2d 480 [Ky 1978] [nine attempts to repair vehicle]); failing to honor warranties (see, e.g., State of New York v General Motors Corp., 120 Misc 2d 371 [1983] [$100 deductible on extended warranty held unlawful]; Slaney v Westwood Auto, 322 NE2d 768 [Mass 1975] [failure to fulfill promises to repair defective engine within 30 days]); poor workmanship (see, e.g., Djordjevic v King Bear Auto Serv. Ctr., NYLJ, Nov. 14, 1994, at 32, col 1 [Yonkers City Ct] [mechanic’s failure to replace drained oil causes engine to burn up]), and bait and switch schemes, "lowballing” (see, e.g., State v Williams' N. W. Chrysler Plymouth, 87 Wash 2d 298, 306, 553 P2d 423, 430 [1976] ["the advertisements were not bona fide oifers to sell the cars. They were designed to lure consumers into North West”]; see also, The End of Car Wars: A Statutory Compromise for Alleviation of Consumer Problems in the Automotive Repair Industry, 23 St. Louis U LJ 795, 796 [1979] ["It has been estimated that almost a third of all costs for automobile repairs are unnecessary and that these unnecessary repairs constitute a total loss to consumers of well over twelve billion dollars a year”]; Annotation, Liability of Repairer for Unauthorized, Unnecessary, or Fraudulent Repairs of Motor Vehicle, 23 ALR4th 274, 289, n 5 [" 'Lowballing’ is the intentional quoting of an appealingly, sometimes ridiculous, low repair price which the automobile mechanic does not intend to honor, but which entices the consumer to authorize the repairs; once the mechanic has the motor vehicle in his possession, other malfunctions are 'discovered’ and the price is accordingly 'adjusted’ upward by the mechanic”]; Fixing The Car Brakes, Mufflers, Transmission, Consumer Reports, Sept. 1994, at 596 ["Where can you find an honest mechanic who will do repairs quickly and well—and at a good price”]).

Extended And New Parts Warranties

The extended warranty and new parts warranty business generates extraordinary profits for the retailers of cars, trucks and automotive parts and for repair shops. It has been estimated that no more than 20% of the people who buy warranties ever use them (see, e.g., Who Needs An Extended Warranty?, Consumer Reports, Jan. 1991, at 21 ["Retailers estimate that for every dollar they take in from selling extended warranties, they will have to spend between 4 and 15 cents on service”]). Of the 20% that actually try to use their warranties, as did the plaintiff, they soon discover that the real costs can eas *395 ily exceed the initial cost of the Warranty Certificate. Stated, simply, selling Warranty Certificates is a gold mine for Midas.

The Midas Warranty Certificate

Consumers that use the Midas Warranty Certificate believe it to be similar to an insurance policy where in return for the consumer’s payment Midas assumes the risk of worn brake pads and undertakes to indemnify the consumer against such loss by replacing them free of charge (see, 68 NY Jur 2d, Insurance, §§ 502, 503, 508; compare, People v American Motor Club, 133 AD2d 593 [1987]). This expectation is reasonable, can be derived from the express language in the Warranty Certificate ("If your Midas * * * brake pads become * * * worn out * * * Midas will install replacement warranted * * * brake pads. You will not be charged for the brake * * * pads or the labor required to install them”) and has been the subject of nationwide advertising for decades (see, e.g., Parthenopoulos v Maddox, 629 SW2d 563 [Mo 1981] [Midas customer charged $140 for guaranteed[1] brake job]; Brooks v Midas-International Corp., 47 Ill App 3d 266, 270, 5 Ill Dec 492, 494, 361 NE2d 815, 817 [1977] ["Plaintiff * * * alleged * * * that (Midas) misrepresented its guarantee[2] for the purpose of creating the impresin consumer’s minds that no charges would be assessed other than an installation charge * * * (Midas’s) purpose was to induce (consumers) to purchase from (Midas) instead of its competitors”]; see also, Coryell v Lombard Lincoln-Mercury Merkur, 189 Ill App 3d 163, 136 Ill Dec 379, 544 NE2d 1154 [1989] [consumer unlawfully charged for guaranteed[3] carburetor repair]).
"guarantee:
"the MIDAS MUFFLER IS GUARANTEED FOR AS LONG AS YOUR OWN YOUR CAR. If ANYTHING GOES WRONG WITH THIS MUFFLER, A NEW GUARANTEED MIDAS MUFFLER WILL BE INSTALLED ON YOUR CAR BY ANY MIDAS MUFFLER SHOP FOR ONLY AN INSTALLATION CHARGE.”

*396
The Condition Precedent

From Midas’s- standpoint the Warranty Certificate is not insurance at all but a clever marketing device used to lure consumers back to Midas repair shops for simple repairs which can be done by others. Once in the shop Midas personnel refuse to honor the Warranty Certificate unless the consumer complies with a condition precedent, i.e., Midas personnel must be given an opportunity to find other "problems” in the brake system and must correct those problems at the consumer’s expense. With the exception of selling warranties that are never used, Midas does not make money unless it is selling parts and charging for labor. It is a near certainty that once a consumer’s vehicle is up on the Midas garage rack that "problems” will be found and expensive solutions required.

Violation Of UCC 2-316 (1)

UCC 2-316 (1) provides that "Words or conduct * * * [creating] * * * an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other”. The Midas Warranty Certificate has two operative clauses which conflict with each other.
First, "what is covered * * *
"Midas will install replacement warranted brake * * * pads. You will not be charged for the brake * * * pads or the labor required to install them”.
Second, "what is not covered.
"This warranty does not cover the cost of additional components and labor required to restore the brake system to its proper operation. The Midas shop must restore the entire brake system to its proper operation”.
The second operative clause is unclear and ambiguous and as such should be construed against Midas and in favor of the plaintiff (see, e.g., Stream v Sportscar Salon, 91 Misc 2d 99, 102-103 [1977]; Walsh v Ford Motor Co., 59 Misc 2d 241, 242 [1969]). In addition, the second clause violates UCC 2-316 (1) since it negates and emasculates the first clause. The two clauses cannot be reconciled and as such the first clause, "what is covered," must prevail over the second clause, "what is not covered" (see, e.g., Wilson Trading Corp. v David Ferguson, Ltd., 23 NY2d 398 [1968]).

Violation Of UCC 2-719 (2)

ÜCC .2-719 (2) provides that "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, *397 remedy may be had as provided in this Act”. Plaintiff purchased the Midas Warranty Certificate for a specific purpose, to have the brake pads on her vehicle replaced and installed without cost should the pads become worn. Requiring plaintiff to spend substantial sums to make repairs to her entire brake system as Midas deems appropriate and necessary is to deprive plaintiff of the substantial benefit of the new parts warranty which she purchased. As such the Warranty Certificate as interpreted by Midas fails of its essential purpose and violates UCC 2-719 (2) (see, e.g., Cayuga Harvester v Allis-Chalmers Corp., 95 AD2d 5 [1983]; Stream v Sportscar Salon, 91 Misc 2d 99, 105-106, [1977], supra; see also, Klakis v Nationwide Leisure Corp., 73 AD2d 521, 524 [1979] [disclaimer void since it "strikes at the heart of the performance bargained for under the agreement”]).

Violation Of General Business Law §617 (2) (a)

General Business Law § 617 (2) (a) provides "If a part does not conform to the warranty * * * the initial seller shall make repairs as are necessary to correct such nonconformity.” General Business Law § 617 (2) (a) protects New York State consumers who purchase new parts and/or new parts warranties such as the plaintiff herein. Its language is clear and cannot be modified or emasculated by allowing Midas to impose a costly condition precedent on its promise to replace worn brake pads without cost. Midas has violated General Business Law § 617 (2) (a) (see, e.g., Sibert v Federal Trade Commn., 367 F2d 364, 365 [2d Cir 1966] ["The petitioners also advertised * * * that their product was guaranteed for ten years, but the circulars * * * disclosed that the guarantee was conditional upon payment by the customer of shipping costs and a $30 service charge. The Commission could properly conclude (that this business practice was deceptive”)]; Matter of State of New York v Ford Motor Co., 136 AD2d 154 [1988] [unlawful to impose a $100 deductible upon an extended limited warranty]).

Breach Of Warranty

The plaintiff purchased a new parts warranty from Midas for the replacement of worn brake pads free of charge. Midas breached that warranty in two respects. First, Midas refused to honor its Warranty Certificate unless plaintiff complied with a condition precedent allowing Midas to make additional brake system repairs as it deemed necessary and proper. Second, Midas refused to give plaintiff the promised "non-installed, non- *398 warranted brake shoes and/or disc brake pads” when plaintiff refused to authorize Midas to "restore the entire brake system to its proper operation”.
Midas’s explanation at trial that it must inspect the entire brake system and make all necessary repairs in order to limit its exposure to consumer lawsuits is an argument best made to its insurance company. It certainly does not justify breaching its warranty with plaintiff and violating the various consumer protection statutes discussed herein.

Violation Of General Business Law § 349

General Business Law § 349 prohibits unfair and deceptive business practices and applies to automobile warranties (see, e.g., State of New York v General Motors Corp., 120 Misc 2d 371 [1983] [THM 200 transmissions; deceptive and unconscionable limitations of warranties]; Slaney v Westwood Auto, supra [Massachusetts Consumer Protection Statute applies to automobile warranty claims]; State v Williams’ N. W. Chrysler Plymouth, supra [Washington Consumer Protection Statute applies to deceptive warranties]; Chrylser Corp. v Schuenmann, 618 SW2d 799 [Tex 1981] [Texas Consumer Protection Statute applies to breach of warranty claims]; Ford Motor Co. v Mayes, supra [Kentucky Consumer Protection Statute applies to warranty claims]).
General Business Law § 349 is a broad, remedial statute (see, e.g., Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20 [1995]; see also, Moldovan, New York Creates a Private Right of Action to Combat Fraud: Caveat Venditor, 48 Brook L Rev 509 [1982]) directed towards giving consumers a powerful remedy. The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive or misleading in a material respect and (2) proof that plaintiff was injured (see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 22-A, at 565; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [1987]; Geismar v Abraham & Straus, 109 Misc 2d 495 [1981]). There is no requirement under General Business Law § 349 that plaintiff prove that defendant’s practices or acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant’s deceptive practices.
In this case the Midas Warranty Certificate was misleading and deceptive in that it promised the replacement of worn brake pads free of charge and then emasculated that promise *399 by requiring plaintiff to pay for additional brake system repairs which Midas would deem necessary and proper. Defendant has violated General Business Law § 349 and is responsible for all appropriate damages thereunder.
DAMAGES
The plaintiff shall be awarded the following damages: First, damages will include $128.10 representing the cost of purchasing and installing new brake pads which Midas refused to install; Second, pursuant to General Business Law § 349 (h) the court finds that Midas wilfully violated General Business Law § 349. The court trebles plaintiff’s actual damages to $384.30; Third, pursuant to General Business Law § 349 (h) the court awards plaintiff’s attorney legal fees of $100.
[Portions of opinion omitted for purposes of publication.]

. Parthenopoulos v Maddox, 629 SW2d 563, 565 (Mo 1981), supra. "Midas custom brake linings are guaranteed to the original purchaser against wearing out for 30,000 miles. Replaced, if necessary for only a service charge at any Midas Brake Department.”

. Brooks v Midas-International Corp., 47 Ill App 3d 266, 269, 5 Ill Dec 492, 494, 361 NE2d 815, 817 (1977), supra.

. Coryell v Lombard Lincoln-Mercury Merkur, 189 Ill App 3d 163, 166-167, 136 Ill Dec 379, 381-382, 544 NE2d 1154, 1156-1157 (1989), supra. "Attention: Lincoln, Mercury and Ford owners * * * our lifetime service GUARANTEE — 'WE FIX IT RIGHT, OR WE FIX IT FREEÜ’ * * * 0nC6 yOU pay for a covered repair, that’s it. If that repair needs to be made again, we’ll fix it free. Free parts. Free labor. It costs you absolutely nothing.”